177 F.3d 491
 FAIRPORT INTERNATIONAL EXPLORATION, INC., Plaintiff-Appellant,
v.
THE SHIPWRECKED VESSEL, known as the CAPTAIN LAWRENCE, in
rem, Defendant,
and
The State of Michigan, Intervenor-Appellee.
 No. 95-1783.
 United States Court of Appeals,
Sixth Circuit.
 Reargued Dec. 10, 1998.
Decided May 13, 1999.
Rehearing Denied June 23, 1999.
 
 Donald C. Adams, Jr., Ralph F. Mitchell, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, Michael L. Donner (argued and briefed), Kaufman & Canoles, Norfolk, VA, for Plaintiff-Appellant.
 Richard T. Robol (briefed), Columus America Discovery Group, Columbus, OH, for Amicus Curiae.
 Stephen F. Schuesler (argued and briefed), Office of Attorney General, Natural Resources Division, Lansing, MI, for Intervenor-Appellee.
 Before: BOGGS and MOORE, Circuit Judges; and DOWD,* District Judge.
 BOGGS, J., delivered the opinion of the court, in which DOWD, D.J., joined. MOORE, J. (pp. 502-03), delivered a separate opinion concurring in part and concurring in the result.
 OPINION
 BOGGS, Circuit Judge.
 
 
 1
 "Don't give up the ship," ordered Captain James Lawrence in 1813 as HMS Shannon engaged his frigate Chesapeake. One hundred twenty years later, Wilfred H. Behrens left his boat, the Captain Lawrence, as it sank in Lake Michigan. Decades later, Fairport International Exploration, Inc. acquired an interest in the vessel and, in 1994, brought an in rem action seeking to perfect title to the Captain Lawrence, which is embedded in the bottom of Lake Michigan. The State of Michigan intervened under the Abandoned Shipwreck Act of 1987, 43 U.S.C. §§ 2101--2106, contending that Behrens chose to give up the ship. Thus, claimed Michigan, the Captain Lawrence was an abandoned shipwreck embedded in State lands, and it belonged to Michigan. The district court found that Michigan established a "colorable claim" of ownership of the wreck and that the Eleventh Amendment therefore divested the court of jurisdiction. This court affirmed, see Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel, known as Captain Lawrence, 105 F.3d 1078 (6th Cir.1997), vacated, --- U.S. ----, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998), and the Supreme Court vacated that decision in light of its ruling in California v. Deep Sea Research, 523 U.S. 491, 118 S.Ct. 1464, 149 L.Ed.2d 626 (1998). Now, this court again confronts the controversy surrounding the Captain Lawrence. Specifically, we consider the burden of proof faced by Michigan regarding whether Behrens abandoned the Captain Lawrence, and we decide whether the State may offer circumstantial evidence to prove abandonment by Behrens.
 
 I. Background
 
 2
 This case arises from two men's "obsession" with a "mystery legend" of gold lost in northern Lake Michigan during the Civil War. The modern story begins with the Captain Lawrence, which sank in northern Lake Michigan in 1933. Built in 1898 and christened the Alice, the Gay Captain Lawrence served as a training vessel for the Sea Scouts (a branch of the Boy Scouts) from 1925 to 1931. In 1931, the boat sank in deep water of Lake Michigan, was towed to the shallow water of the Menominee River in Wisconsin, and was purchased for $150 by Wilfred H. Behrens, who renamed it the Captain Lawrence. Behrens's daughter Alice described her father as a "deep sea diver, salvage diver," obsessed with sunken treasure. The Captain Lawrence left Milwaukee on August 26, 1933, bound for Summer Island in Lake Michigan, but never reached its destination. At 3 a.m. on September 19, 1933, a sudden wind blew the vessel onto the rocky shore of Lake Michigan's Poverty Island. Behrens and his crew of four escaped and took refuge on Poverty Island. Pounded to pieces, the ship eventually sank.
 
 
 3
 On November 2, 1933, Behrens filed a "Record of Casualties to Vessel." In it, he assigned the uninsured boat a value of $200,[1] alleged that it carried no cargo, and described the boat as a "total loss." He wrote that the Coast Guard offered assistance, which he declined, on the morning of the stranding. No evidence shows that Behrens ever returned to salvage the boat, although his daughter Alice testified that he told her that he intended to raise money to repair it. After the wreck, Behrens purchased a new vessel and engaged in river salvaging, but could not afford a boat "worthy of the lake waters up around Poverty Island." Behrens died intestate in 1959, survived by several children and his ex-wife.
 
 
 4
 Years later, Steven Libert, president of Fairport International Exploration, Inc. ("Fairport"), learned of the legend of the sunken gold. While researching the legend in library archives, he encountered references to a vessel called the "Saint Lawrence " that sank while searching for the gold. Libert discovered the boat's true name, the Captain Lawrence, and began diving off Poverty Island to recover the vessel. In 1984 and 1985, he uncovered debris, a propeller blade, and an anchor that he believes came from the ship. He researched Behrens and his associates, and he tracked down Behrens's ex-wife and children. Libert believed that Behrens discovered the long-lost gold and that the Captain Lawrence contained Behrens's logbook and, possibly, a chest of the gold.
 
 
 5
 In 1993, Libert petitioned Michigan for permits to dredge an area of the lake bed in which he believes the Captain Lawrence is embedded. The State refused to issue the permits. In 1994, Behrens's surviving heirs assigned their interests in the Captain Lawrence to Behrens's daughter, Gladys Nally, who executed a "Salvage Bill of Sale" with Fairport, assigning Libert's corporation the exclusive right to salvage the vessel's remains.
 
 II. Procedural History
 
 6
 On June 28, 1994, Fairport filed a verified complaint in admiralty.[2] Fairport asked the district court to declare it the sole owner of the Captain Lawrence; to give Fairport a salvage award; to enjoin third parties from interfering with salvage operations; and to issue an in rem arrest warrant for the vessel. The district court allowed Michigan to intervene. On June 15, 1995, the district court issued an opinion and an order granting Michigan's motion to dismiss for lack of jurisdiction.
 
 
 7
 The district court held that it lacked jurisdiction to adjudicate claims against States pursuant to the Abandoned Shipwreck Act of 1987 ("ASA"), 43 U.S.C. §§ 2101-2106. The court found that Michigan proved that it had a colorable claim of ownership of the Captain Lawrence and, therefore, that the Eleventh Amendment prohibited the action against the State. To reach this result, the court turned to the ASA, which reads:
 
 
 8
 (a) United States title
 
 
 9
 The United States asserts title to any abandoned shipwreck that is--
 
 
 10
 (1) embedded in submerged lands of a State;
 
 
 11
 ....
 
 
 12
 (c) Transfer of title to States
 
 
 13
 The title of the United States to any abandoned shipwreck asserted under subsection (a) of this section is transferred to the State in or on whose submerged lands the shipwreck is located.
 
 
 14
 43 U.S.C. § 2105. Preliminarily, the court held that Michigan need not definitively establish that it owned the vessel. Rather, interpreting Justice Stevens's plurality opinion in Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), the district court ruled that the Eleventh Amendment would bar the suit if Michigan could prove that it had a "colorable claim" to the res. The court held that a colorable claim required Michigan to show, by a preponderance of the evidence, that the Captain Lawrence was embedded in submerged lands and abandoned.
 
 
 15
 After questioning whether Fairport proved that it actually found the ship and whether any of the recovered artifacts came from the Captain Lawrence, the district court assumed for argument's sake that Fairport recovered parts of the vessel. It found that the evidence proved that the ship was embedded in the submerged lands of Michigan. It turned to the status of the wreck.
 
 
 16
 The ASA does not define "abandoned." In a statement of findings, Congress assigns to states the responsibility of managing natural resources, which include "abandoned shipwrecks, which have been deserted and to which the owner has relinquished ownership rights with no retention." 43 U.S.C. § 2101(b). The district court concluded that the ASA intended "abandoned" to have "the traditional interpretation of that term by courts sitting in admiralty." It held that a party may prove abandonment from circumstantial evidence (the "inferential abandonment" theory) and that a party need not show that a vessel's owner expressly renounced his claim on a ship ("express abandonment").
 
 
 17
 The district court discussed its findings of fact, concluding: "The evidence, although circumstantial, clearly demonstrates Wilfred Behrens' intent to abandon the vessel." Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel, known as Captain Lawrence, 913 F.Supp. 552, 558 (W.D.Mich.1995) ("Fairport I "), aff'd, 105 F.3d 1078 (6th Cir.1997), vacated, --- U.S. ----, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998). The court relied on the following findings of fact:
 
 
 18
 (1) The boat, smashed on the rocks of Poverty Island, now lies under only 40-60 feet of water close to shore, not in deep water, and not far from land;
 
 
 19
 (2) In the 1930s, technology existed to salvage the boat;
 
 
 20
 (3) Behrens did not insure the boat; he valued it at $200, and he called it a "total loss";
 
 
 21
 (4) No evidence shows that Behrens took measurable steps to recover the boat, although he salvaged in rivers for years after it sunk;
 
 
 22
 (5) Behrens did not discuss the boat's location with his family, and he left no will disposing of the boat;
 
 
 23
 (6) Until Libert approached them, Behrens's heirs took no steps to find or salvage the boat.
 
 
 24
 The court found that Michigan established a colorable claim by showing by a preponderance of the evidence that Behrens abandoned the Captain Lawrence. Once Michigan made this showing, the court held that Michigan set forth a colorable claim of ownership, because a finding of abandonment implicated the ASA, which transfers to Michigan the shipwreck's title. The court decided that, "Because the State has met its burden of showing that it has a colorable claim of interest in the vessel, this Court concludes that the Eleventh Amendment bars this court from adjudicating the State's rights in this vessel...." Fairport I, 913 F.Supp. at 559. It dismissed the claim for lack of jurisdiction.
 
 
 25
 Fairport appealed. On January 30, 1997, a panel of the Sixth Circuit issued an opinion affirming the district court's judgment. See Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel, known as Captain Lawrence, 105 F.3d 1078 (6th Cir.1997) ("Fairport II "), vacated, --- U.S. ----, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998). The opinion in Fairport II interpreted the Eleventh Amendment and the ASA to divest federal courts of jurisdiction over claims to embedded shipwrecks. See id. at 1082-83. It held that "the sole question before us is whether the Captain Lawrence was 'abandoned' within the meaning of the statute. That question, in turn, has two components: one, the substantive meaning of the term, and two, the proper burden of proof." Id. at 1083.
 
 
 26
 The court turned to Michigan's claim that the district court erred when it required Michigan to show by a preponderance of the evidence that a ship has been abandoned. Michigan argued that the district court need only engage "in a cursory review of the merits to determine if Michigan's claim was colorable." Ibid. This court rejected Michigan's argument and upheld the district court. The Fairport II court adopted the reasoning of the Ninth Circuit in Deep Sea Research, Inc. v. The Brother Jonathan, 89 F.3d 680 (9th Cir.1996), amended and superseded on denial of reh'g by 102 F.3d 379 (9th Cir.1996), aff'd in part, vacated in part, California v. Deep Sea Research, 523 U.S. 491, 118 S.Ct. 1464, 149 L.Ed.2d 626 (1998), which treated Eleventh Amendment immunity in ASA proceedings as an affirmative defense, which a State must prove by a preponderance of the evidence. See Fairport II, 105 F.3d at 1084.
 
 
 27
 The court next disposed of Fairport's claim that the district court clearly erred when it found that Michigan proved by a preponderance of the evidence that Behrens abandoned the Captain Lawrence. The Fairport I court defined "abandonment," discussing two interpretations: one view, embodied in the Brother Jonathanopinion, which finds abandonment from express acts or by inference from circumstantial evidence ("inferential abandonment"), and another view, which finds abandonment only where the owner performs a "clear and unmistakable affirmative act" of abandonment ("express abandonment"). Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 974 F.2d 450, 461 (4th Cir.1992) (discussing abandonment under the laws of salvage and of finds), cert. denied, 507 U.S. 1000, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). This court adopted the Brother Jonathan's approach, noting "that there is ample authority that abandonment may, for some purposes at least, be inferred from the surrounding circumstances." Fairport II, 105 F.3d at 1085. After ruling that a party could prove abandonment by inference, this court held that the district court did not clearly err when it found abandonment by Behrens. See ibid. It affirmed the judgment of the district court.
 
 
 28
 Over a year later, on April 22, 1998, the Supreme Court decided California v. Deep Sea Research, 523 U.S. 491, 118 S.Ct. 1464, 149 L.Ed.2d 626 (1998) (unanimous opinion), the appeal from the Ninth Circuit's judgment in the Brother Jonathan. Justice O'Connor, writing for the Court, explained that, where a State does not possess the vessel that is the subject of an in rem admiralty action, the Eleventh Amendment does not bar federal jurisdiction over the vessel and, therefore, federal courts may adjudicate competing claims to the shipwrecked vessel. See Deep Sea Research, 118 S.Ct. at 1473. The Court vacated the judgment in the Brother Jonathan to the extent that the "assumption that the Eleventh Amendment was relevant to the courts' inquiry" influenced the conclusion that the Brother Jonathan was not abandoned for purposes of the ASA. See ibid. The Court concluded, "In light of our ruling that the Eleventh Amendment does not bar complete adjudication of the competing claims to the Brother Jonathan in federal court, the application of the ASA must be reevaluated." Ibid. The Court left to the Brother Jonathan district court the question whether the vessel had been abandoned, but the Court clarified "that the meaning of 'abandoned' under the ASA conforms with its meaning under admiralty law." Ibid.
 
 
 29
 Five days later, the Court granted Fairport's petition for writ of certioriari, vacated Fairport II, and remanded the case to this court for reconsideration in light of Deep Sea Research. See Fairport Int'l Exploration, Inc. v. The Shipwrecked Vessel Known as the Captain Lawrence, --- U.S. ----, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998). Aided by amicus curiae Columbus-America Discovery Group, a "multidisciplinary team of scientists, engineers, historians, and entrepreneurs devoted to exploring the deep ocean," this court now revisits the dispute between Fairport and the State of Michigan.
 
 
 30
 III. Determining The Owner of the Captain Lawrence
 
 A. The Eleventh Amendment Red Herring
 
 31
 Under the ASA, if a State proves that a shipwreck is embedded in the submerged lands of the State and abandoned by its owner, title to the shipwreck vests in the State. See 43 U.S.C. § 2105(a). The Captain Lawrence is embedded in the submerged lands of Michigan. The district court in Fairport I reasoned that, if Behrens had abandoned the shipwreck, Michigan owned the Captain Lawrence, and the Eleventh Amendment prevented the court from refereeing an ASA dispute about ownership. Thus, the district court conducted a preliminary inquiry into "abandonment" to see whether the case implicated the ASA. See Fairport I, 913 F.Supp. at 555 ("If the State bears its burden of showing ... that the Captain Lawrence has been abandoned ... the Court would be divested of jurisdiction to adjudicate the merits of the State's claim."). The court did not seek conclusively to determine whether Behrens abandoned the ship; rather, it ended the inquiry after finding that the State proved that it had a "colorable claim" to the shipwreck (i.e., that a preponderance of the evidence showed that Behrens abandoned the ship). Under this logic, once Michigan established its colorable claim, the Eleventh Amendment prevented the court from adjudicating any dispute under the ASA.
 
 
 32
 The Supreme Court's recent decision in Deep Sea Research rejects this approach. That opinion definitively instructs us that, if a State does not possess a shipwreck, the Eleventh Amendment does not prevent a federal court from entertaining claims under the ASA to the shipwreck. See Deep Sea Research, 118 S.Ct. at 1473. The Court explicitly distinguished past cases on this ground. See, e.g., id. at 1471 ("In this case, unlike in Treasure Salvors, DSR asserts rights to a res that is not in the possession of the State.").
 
 
 33
 In the Brother Jonathan dispute, as in Fairport I, the district court believed that the Eleventh Amendment barred federal jurisdiction over shipwrecks claimed by States through the ASA's transfer of title. The Supreme Court vacated the Brother Jonathan opinion and remanded because the Court found that this evaluation of abandonment "was necessarily influenced by the [mistaken] assumption that the Eleventh Amendment was relevant to the courts' inquiry." Deep Sea Research, 118 S.Ct. at 1473. It continued: "In light of our ruling that the Eleventh Amendment does not bar complete adjudication of the competing claims to the Brother Jonathan in federal court, the application of the ASA must be reevaluated." Ibid. This implies that, because no jurisdictional barrier exists, the district court should conduct only one "abandonment" inquiry, and that that inquiry does not ask a preliminary jurisdictional question, but rather resolves whether Behrens abandoned the ship, and thus whether the ASA transfers title to Michigan.
 
 
 34
 The Court's reasoning in Deep Sea Research applies to Fairport's claims. The Fairport Idistrict court believed that the Eleventh Amendment foreclosed jurisdiction if Michigan indeed owned the Captain Lawrence. Thus, the district court dismissed the case after it found that Michigan proved, by a preponderance of the evidence, that Behrens abandoned his ship. Michigan did not possess the boat, however: the Captain Lawrence remained embedded in the lake bed during trial, and the State did not claim any of the artifacts recovered from the vessel.[3] Believing a jurisdictional bar existed if Michigan had title to the boat, the district court conducted only a preliminary inquiry to assess whether Michigan owned the vessel. Once the court decided that Michigan proved by a preponderance of the evidence that Behrens abandoned the boat, it dismissed the case without resolving the competing claims for title. It held that Michigan had a "colorable claim" to the Captain Lawrence under the ASA; it did not hold that Michigan certainly owned the shipwreck.
 
 
 35
 The Supreme Court has clarified that, because Michigan did not possess the res, the district court should not have undertaken a preliminary Eleventh Amendment inquiry. Rather, Michigan's claim under the ASA should receive an evaluation consistent with the requirements of the ASA and maritime law. The Supreme Court remanded the Brother Jonathan case "[i]n light of [the Court's] ruling that the Eleventh Amendment does not bar complete adjudication of the competing claims to the Brother Jonathan in federal court...." Ibid. (emphasis added). Thus, we remand this case to the district court for complete adjudication of the competing claims to the Captain Lawrence. We write to guide the district court in its consideration of two issues: the means of proving abandonment, and the burden of proof placed upon Michigan.
 
 B. Abandonment
 
 36
 Under maritime law, those who wish to raise sunken ships are governed by either the law of salvage or the law of finds. The law of salvage applies when the original owner retains an ownership interest in the ship; a salvor receives a salvage award, but not title to the ship. See, e.g., Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 640 F.2d 560, 567 (5th Cir.1981). Where the owner has abandoned the ship, however, recent doctrine applies the law of finds, vesting title in the finder of the ship. See Columbus-America, 974 F.2d at 464; Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel, 833 F.2d 1059, 1064-65 (1st Cir.1987); Treasure Salvors, 640 F.2d at 567. Whether the owner abandoned the ship thus determines which law applies, and, subsequently, who owns the ship. Intent on protecting the property rights of owners, admiralty courts recognize a presumption against finding abandonment. See, e.g., Hener v. United States, 525 F.Supp. 350, 356-57 (S.D.N.Y.1981).
 
 
 37
 The 1987 passage of the ASA altered this approach. The ASA transfers to a State the title to all abandoned shipwrecks embedded in the submerged lands of the State. See 43 U.S.C. § 2105. The ASA expressly rejects the application of the maritime laws of salvage and finds. See 43 U.S.C. § 2106(a) ("The law of salvage and the law of finds shall not apply to abandoned shipwrecks to which section 2105 of this title applies."). If a diver now discovers a long-lost ship embedded in the submerged lands of a State, a finding of abandonment leaves the diver with neither title nor a salvage award (unless state law provides otherwise).
 
 
 38
 Deep Sea Research teaches that--at least where a State does not possess the contested res--a court should not engage in an Eleventh Amendment inquiry. A separate threshold question persists: is the shipwreck abandoned? If the owner abandoned the ship, the ASA automatically, perhaps instantaneously, takes title for the United States and transfers title to a State, resolving the legal issue and ending the court's inquiry. If the owner did not abandon the ship, the claim to the ship does not implicate the ASA, because the statute applies only to "abandoned" shipwrecks. The ownership of the wreck turns on the meaning of "abandoned."
 
 
 39
 The Supreme Court remanded the Brother Jonathan with a one-sentence "clarification that the meaning of 'abandoned' under the ASA conforms with its meaning under admiralty law." Deep Sea Research, 118 S.Ct. at 1473. Until the 1987 passage of the ASA, admiralty courts interpreted "abandoned" primarily when deciding whether to apply the law of salvage or of finds. The ASA departs from maritime law by insulating abandoned shipwrecks from the law of salvage and finds, see 43 U.S.C. § 2106(a), although the Act did not affect the meaning of "abandoned," which serves as a precondition for the invocation of the ASA's provisions.
 
 
 40
 In this court's opinion in Fairport II, we adopted the inferential abandonment test, which allows parties to prove abandonment even if the original owner has not expressly renounced her claim to a vessel. The Fairport II court believed that the inferential abandonment test comported with the weight of maritime authority, see Fairport II, 105 F.3d at 1084 (favorably relating the Brother Jonathan court's discussion of the test, and contending that "[t]his reasoning accords with the vast majority of decisions that have discussed the issue") and sound policy reasons, see id. at 1085 ("[A]pplication of [the express abandonment test] would render the ASA a virtual nullity."). We recognize that the legislative history of the ASA also supports this view. See 1988 U.S.C.C.A.N. 365, 366 ("[T]he term 'abandoned' does not require the original owner to actively disclaim title or ownership. The abandonment or relinquishment of ownership rights may be implied or otherwise inferred ...."); id. at 373-74.
 
 
 41
 The appeals court decisions in Fairport II and the Brother Jonathanrejected the holding of Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 974 F.2d 450 (4th Cir.1992), which appears to adopt the express abandonment theory. See id. at 464. A court following the rule of Columbus-America may find abandonment only where it finds "a strong actus element required to prove the necessary intent," id. at 461; the decision offers as an example "an owner's express declaration abandoning title." Ibid. (quoting "T. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 15-7, at 512 (1987)"). Cases support this proposition, see, e.g., Hener, 525 F.Supp. at 357 ("[A] finding that title to such property has been lost requires strong proof, such as the owner's express declaration abandoning title."); Wilkie v. Two Hundred and Five Boxes of Sugar, 29 F. Cas. 1247, 1247 (D.S.C.1796) (No. 17,662), although few explain their reasoning.
 
 
 42
 We think that the apparent divergence of authority masks a degree of underlying agreement. A close reading of the cases reveals a uniform concern that courts impose a high burden on those who argue that an owner abandoned property that sank against his will. To overcome this significant hurdle, the claimant may prove abandonment by inference as well as by express deed. This proposition finds support even from those cases cited as examples of the doctrine of "express abandonment." See, e.g., Columbus-America, 974 F.2d at 464-65 ("Such abandonment must be proved by clear and convincing evidence, though, such as an owner's express declaration abandoning title. Should the property encompass an ancient and long lost [sic] shipwreck, a court may infer an abandonment."); Wiggins v. 1100 Tons, More or Less, of Italian Marble, 186 F.Supp. 452, 456 (E.D.Va.1960) ("While lapse of time and nonuser [sic] are not sufficient, in and of themselves, to constitute an abandonment, these factors may, under certain circumstances, give rise to an implication of intention to abandon."). Once these opinions recognize an exception to a rule of express abandonment, the question becomes after what length of years may a court infer abandonment; rather than draw arbitrary (time) lines separating express from implied tests, we choose to view length of time as one factor among several relevant to whether a court may infer abandonment.
 
 
 43
 We agree that lapse of time, alone, does not necessarily establish abandonment, see e.g., Wilkie, 29 F. Cas. at 1247, and an owner's failure to return to a shipwreck site does not necessarily prove abandonment, but we recognize that a combination of several facts, proved clearly and convincingly, see Part III.C infra, may support a finding that an owner has abandoned a shipwreck. Rigid adherence to a doctrine requiring express abandonment would require courts to "stretch[ ] a fiction to absurd lengths," Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 569 F.2d 330, 337 (5th Cir.1978), where courts encounter claims to ancient shipwrecks with long-forgotten and undiscoverable owners. Permitting proof by inference reconciles maritime law's presumption against finding abandonment with the apparently-conflicting caselaw, and it explains the decisions upholding inferential abandonment. See, e.g., Brother Jonathan, 102 F.3d at 387-88; Fairport II, 105 F.3d at 1084-85; Moyer v. Wrecked and Abandoned Vessel, known as Andrea Doria, 836 F.Supp. 1099, 1105 (D.N.J.1993) ("Abandonment may be inferred from circumstantial evidence. Factors such as lapse of time and nonuse by the owner may give rise to an inference of an intent to abandon. Other factors include the place of the shipwreck as well as the actions and conduct of the parties having ownership rights in the vessel.") (citation omitted).
 
 
 44
 Hence, we hold that a State may prove by inference that a shipwreck last owned by a private party is "abandoned," for the purposes of admiralty law and the ASA. Proof by inference still requires proof, not conjecture--a requirement bolstered by the exacting burden of proof admiralty law imposes on those who allege abandonment. See Part III.C infra. We limit our holding to vessels formerly owned by private parties, and express no view as to the application of the express abandonment test to vessels initially owned by the United States. See, e.g., United States v. Steinmetz, 973 F.2d 212, 222-23 (3d Cir.1992), cert. denied, 507 U.S. 984, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993); cf. United States v. Pennsylvania & Lake Erie Dock Co., 272 F. 839, 843 (6th Cir.1921) (explaining that, once the government acquires title to land, it cannot abandon it without an express congressional declaration).
 
 C. Burden of Proof
 
 45
 The district court in Fairport I required only that Michigan establish a colorable claim to the shipwreck. The court permitted Michigan to prove by a preponderance of the evidence that Behrens abandoned the Captain Lawrence. See Fairport I, 913 F.Supp. at 559. The Supreme Court disapproved of a similar threshold inquiry by the Brother Jonathan district court, holding that federal courts may engage in "complete adjudication of the competing claims" under the ASA. Deep Sea Research, 118 S.Ct. at 1473.
 
 
 46
 When the district court revisits this case on remand, it will not conduct a threshold inquiry to determine whether Michigan has a colorable claim under the ASA. Instead, it will decide whether Behrens abandoned the shipwreck; if he did, the ASA vests title in Michigan. If he did not, the ASA does not apply. Michigan may prove abandonment by circumstantial evidence, see supra, but Michigan must prove with clear and convincing evidence that Behrens abandoned the ship.
 
 
 47
 The district courts in Fairport I and the Brother Jonathanapplied the "preponderance of the evidence" standard not because admiralty law required it, but instead because they reasoned that parties asserting an affirmative jurisdictional defense must establish the defense by a preponderance of the evidence. See Deep Sea Research, Inc. v. Brother Jonathan, 883 F.Supp. 1343, 1349 (N.D.Cal.1995) ("[A] party asserting sovereign immunity will have to at least prove, by a preponderance of the evidence, that the privilege applies."), aff'd, 102 F.3d 379 (9th Cir.1996), aff'd in part, vacated in part, California v. Deep Sea Research, 523 U.S. 491, 118 S.Ct. 1464 (1998); Fairport I, 913 F.Supp. at 554-54 (adopting the Brother Jonathan court's reasoning).
 
 
 48
 The uniform rule in admiralty law is that a finding of abandonment requires proof by clear and convincing evidence. See, e.g., Columbus-America Discovery Group, 974 F.2d at 467-68 ("[W]hen a previous owner claims long lost property that was involuntarily taken from his control, the law is hesitant to find an abandonment and such must be proved with clear and convincing evidence."); Falgout Bros., Inc. v. S/V Pangaea, 966 F.Supp. 1143, 1145 (S.D.Ala.1997) ("Abandonment must be proven by clear and convincing evidence...."); Moyer, 836 F.Supp. at 1104-05 (requiring proof of abandonment by clear and convincing evidence); cf. Ries v. Thiesse, 61 F.3d 631, 631 (8th Cir.1995) (requiring creditors to prove by clear and convincing evidence a debtor's abandonment of a homestead).
 
 
 49
 The Fairport I and Brother Jonathan district courts also recognized that, if no jurisdictional defense applies, maritime law requires proof by clear and convincing evidence. See Brother Jonathan, 883 F.Supp. at 1351 ("Finally, the finding of abandonment must be supported by strong and convincing evidence."); Fairport I, 913 F.Supp. at 558 (citing Columbus-America, 974 F.2d at 468). The district courts rejected the admiralty standard only because they applied a burden of proof appropriate for assertions of sovereign immunity. The Supreme Court has clarified, however, that where, as here, a State does not possess a shipwreck, the State cannot assert the Eleventh Amendment as a defense to the ASA action. See Deep Sea Research, 118 S.Ct. at 1473. On remand, the district court will decide whether the ASA applies, not whether the Eleventh Amendment bars the action. The court should consider whether Michigan can prove that it owns the shipwreck--that is, whether clear and convincing evidence shows that Behrens abandoned the Captain Lawrence. This burden of proof accords with maritime law and with the protection of private property rights against appropriation by the state.
 
 
 50
 Finally, we observe that the district court must reexamine, and supplement if necessary, the evidence adduced in the earlier proceedings. When the Supreme Court remanded the Brother Jonathan case, it remarked that the district and circuit courts' conclusion about whether the ship was abandoned "was necessarily influenced by the assumption that the Eleventh Amendment was relevant to the courts' inquiry." Ibid. The Court concluded that "the application of the ASA must be reevaluated," ibid., and we agree, urging the district court to conduct its inquiry under the exacting standard of clear and convincing evidence. In light of the conflicting evidence regarding whether Behrens had access to the technology necessary to salvage the ship, the lack of evidence concerning whether Behrens ever returned to Poverty Island, and the testimony regarding Behrens's intention to return, the district court must determine "whether the evidence is fit to induce conviction in the minds of reasonable persons under this elevated, relatively stringent evidentiary standard." Miller's Bottled Gas, Inc. v. Borg-Warner Corp., 955 F.2d 1043, 1050 (6th Cir.1992).[4]
 
 IV. Disposition
 
 51
 We REMAND this case to the district court for proceedings consistent with this opinion. In light of our ruling, we find that Fairport's June 29, 1998 motion for reconsideration of this court's denial of Fairport's May 20, 1998 motion to remand is MOOT.CONCURRING IN PART
 
 
 52
 KAREN NELSON MOORE, Circuit Judge, concurring in part and concurring in the result.
 
 
 53
 I agree with the majority's conclusion that under the Abandoned Shipwreck Act of 1987 ("ASA"), 43 U.S.C. §§ 2101-2106, a state may rely on circumstantial evidence or inference to prove that a shipwrecked vessel has been abandoned. This result is dictated by a fair reading of the admiralty law precedents, to which the Supreme Court referred us in California v. Deep Sea Research, 523 U.S. 491, 118 S.Ct. 1464, 1473, 149 L.Ed.2d 626 (1998), and by the legislative history. Moreover, it is clear that the state bears the burden of proving abandonment. Because I believe the standard of proof to be an open question, however, I do not concur in Part III.C. of the majority opinion.
 
 
 54
 Normally the party bearing the burden of persuasion as to an issue in a civil action must prove its point by a preponderance of the evidence. See 2 MCCORMICK ON EVIDENCE § 340 (John William Strong ed., 4th ed.1992). The question is whether Michigan should face a greater burden in establishing abandonment under the ASA. The majority believes that it should--that Michigan must prove abandonment with clear and convincing evidence. For several reasons I disagree.
 
 
 55
 First, there is surprisingly little case support for the "uniform rule" put forward by the majority. We are directed to a Fourth Circuit case that adopts the clear and convincing evidence standard and to several district court opinions that follow the Fourth Circuit. For additional support we must turn to earlier cases and treatises that speak not of a requirement of clear and convincing evidence but of a need for "strong proof" of abandonment. See, e.g., THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 16-7, at 338 (2d ed.1994). To be sure, I can point to no conflicting cases that explicitly adopt a preponderance of the evidence standard for a showing of abandonment. It appears to me, however, that the precedent supporting deviation from the default standard of proof is meager.
 
 
 56
 Still, however, we must deal with the Supreme Court's "clarification that the meaning of 'abandoned' under the ASA conforms with its meaning under admiralty law." Deep Sea Research, 118 S.Ct. at 1473. Although one could argue that "meaning" encompasses the standard of proof and that the precedent, albeit meager, favors something more than a preponderance of the evidence, I think it more likely that the Court invoked the admiralty law precedents only to define the substantive content of "abandonment." In other words, we are directed to look to the cases to determine what kind of evidence can be used to show abandonment. I do not think that this statement obligates us to derive the standard of proof from the admiralty law precedents.
 
 
 57
 Finally and most importantly, it is clear from the statute and the legislative history that Congress wants the states to take title to abandoned shipwrecks embedded in state waters. Recognizing the conflicting demands placed on abandoned wrecks by divers, archaeologists, and salvors, Congress passed the ASA in order to vest title and management authority in the states. See H.R.REP. NO. 100-514(I) (1988), U.S. Code Cong. & Admin. News at 365. The statute directly transfers title to these shipwrecks to the states, and the legislative history indicates that abandonment may be shown by inference as well as through express relinquishment of title. Permitting proof of abandonment by inference, of course, broadens the applicability of the statute and facilitates the achievement of Congress's goals. Although neither the statute nor its history addresses the standard of proof applicable to the abandonment showing, adopting a clear and convincing evidence standard over the more typical preponderance of the evidence standard would run counter to the expressed intention of Congress to place title to these abandoned shipwrecks in the hands of the states. Without clear direction to the contrary, I cannot endorse the adoption of a clear and convincing evidence standard.
 
 
 58
 Accordingly, I concur in the majority opinion with the exception of Part III.C.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 At the time, new vessels of that size sold for $14,500
 
 
 [2]
 In the verified complaint, Fairport attested that it discovered the Captain Lawrencein 1993, even though Libert found the artifacts in 1984 and 1985. When cross-examined, Libert explained that he could not confirm until 1993 that the artifacts came from the Captain Lawrence. While Congress did not pass the Abandoned Shipwreck Act until two years after the original discoveries, Fairport does not advance any retroactivity defense
 
 
 [3]
 Deep Sea Researchdrew upon Civil War-era precedent to define "possession," for purposes of the ASA, as actual (not constructive) possession. See Deep Sea Research, 118 S.Ct. at 1472-73; see also The Davis, 77 U.S. (10 Wall.) 15, 21, 19 L.Ed. 875 (1869) ("The possession which would do this must be an actual possession, and not that mere constructive possession which is very often implied by reason of ownership under circumstances favorable to such implication."). When the district courts ruled in both the Brother Jonathan and Fairport I, neither State had raised the contested ships nor registered them as historic sites. Nor has Michigan brought before the district court items recovered from the Captain Lawrence
 
 
 [4]
 While the record might support a logical inference that Behrens did not intend to reclaim his ship, it also appears to support a finding that Behrens passed away before he raised the funds to effect a salvage operation; his lack of overt efforts to claim the ship may comport as much with a concern for secreting the putative gold as with an intent to abandon the ship