**Steven C. TRUEMAN, Plaintiff,**

v.

**THE HISTORIC STEAMTUG NEW YORK, Her Engines, Tackle, Furniture, Apparel, etc., Defendant,**

**Emre R. Duhlos and Richard G. Anderson, Claimants.**

**No. 00–CV–083(LEK/DRH).**

United States District Court, N.D. New York.

July 10, 2000.

Opinion of Reconsideration, Oct. 23, 2000.

Steven C. Trueman, Kingston, NY, pro se.

Emre E. Dluhos, Belleville, NJ, pro se.

## DECISION AND ORDER

KAHN, District Judge.

This Admiralty and Maritime action was originally commenced on January 14, 2000, by Plaintiff. It involves an ownership dispute over title to the historic steamtug New York (previously known, among other names, as the Catawissa). Presently before this Court is Plaintiff's motion to establish title under Local Rules of Admiralty and Maritime Claims Rule D. For the reasons set forth below, Plaintiff's motion is denied.

## I. DISCUSSION

### A. Non–Compliance with Publication Requirement

Rule C of Section XII of the Northern District of New York Local Rules of Procedure, for Admiralty and Maritime Claims requires that the notice follow Rule 4(c) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and that the notice required shall be published at least once and shall contain (i) the fact and date of the arrest; (ii) the title of the cause; (iii) the nature of the action; (iv) the amount demanded; (v) the name of the marshal; (vi) the name and address of the attorney for the Plaintiff; and (vii) a statement that Claimants shall file their claims with the Clerk of this Court within ten (10) days after the arrest or within such additional time as shall be allowed by the Court, and shall serve their answers within twenty (20) days after the filing of their claims.

In this action, the notice was publicized on March 3, 2000, by the U.S. Marshal in the *Times Union* (an Albany region newspaper), but contained no reference to the fact that Plaintiff was appearing pro se or was his address provided in said notice. Despite non-compliance, this Court will not penalize a pro se litigant for the U.S. Marshal's error.

### B. Admiralty and Maritime in rem proceedings

An in rem action may be brought against a vessel or other maritime property by making the vessel itself a defendant in the action. Plaintiffs can proceed in rem by either establishing a maritime lien or proceeding pursuant to federal statute.

In the present action, plaintiff provides no reliance upon any federal statute. Therefore, the Court must determine whether Plaintiff may proceed in rem pursuant to a maritime lien.

#### 1. Maritime Liens and Arrest

Only a maritime lien holder may have a vessel arrested. Under a maritime lien arrest, a maritime lien falls into one of four categories: (i) a general average claim, *see Compania Altantica Pacifica, S.A. v. Humble Oil & Ref. Co.,* 274 F.Supp. 884 (D.Md.1967) (damages arising from a vessel's stranding); (ii) a salvage claim, *see Veverica v. Drill Barge Buccaneer No. 7,* 488 F.2d 880 (5th Cir.1974) (salvage must be performed as a result of marine peril and not rendered voluntarily); *The SABINE,* 101 U.S. 384, 11 Otto 384, 25 L.Ed. 982 (1880) (services rendered that successfully prevent vessel from sinking); (iii) a crew wage claim, *see Taylor v. Carryl,* 61 U.S. 583, 20 How. 583, 15 L.Ed. 1028 (1857); or (iv) a claim for damages arising from maritime tort, *see The ANACES,* 93 F. 240 (4th Cir.1899) (all actions for maritime tort are in rem, except for actions for assault and battery, which are in personam).

■ In his complaint, Plaintiff alleges undocumented expenditures of $150,000 for the repair and upkeep of the vessel. This alleged expenditure does not give rise to a maritime lien justifying the arrest of the vessel. Plaintiff provides no proof that these alleged expenditures arose from any of the four categories set forth above.

Plaintiff therefore lacks the required maritime lien to arrest the vessel under Rule C(1)(a).

### 2. Petitory Actions

This Court also has in rem jurisdiction in an action where title is at stake, known as a petitory action.

■ Plaintiff's assertion that this action constitutes a petitory action is erroneous. This Court has in rem jurisdiction over a petitory action only where the plaintiff already holds legal title to the vessel, and not a mere equitable interest. *See Stathos v. The Maro,* 134 F.Supp. 330, 332 (E.D.Va.1955). Since Plaintiff does not already hold title to the vessel but is in effect trying to establish title, this Court lacks jurisdiction.

### II. *CONCLUSION*

Accordingly, it is hereby

ORDERED that Plaintiff's motion to establish title under Admiralty Rule (d). is DENIED;

IT IS FURTHER ORDERED that claimant Emre R. Duhlos' counterclaim is DENIED;

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

### MEMORANDUM—DECISION AND ORDER

Presently before the Court is Plaintiff's motion to reconsider a July 10, 2000 Order denying his motion to establish title under Local Rules of Admiralty and Maritime Claims Rule D. For the reasons set forth below Plaintiff's motion is GRANTED.

### I. BACKGROUND

The historic steamtug *New York* was built in 1896 by the Pennsylvania–Reading Railroad. Then called the *Catawissa,* the vessel was first used to haul coal to and from various ports between Boston, Massachusetts and Charleston, South Carolina. In the 1940's, after its useful life as a tug had ended, a Baltimore salvage company rescued it from the scrap heap and used it to steam clean sludge from the insides of freighters docked in New York Harbor.

In 1992, the Sandusky Maritime History Association (the "Association"), a group of steamship historians, bought the ship with the intention of turning it into a museum.[1] They began towing it through the Erie Canal towards the Sandusky Peninsula in Ohio via Lake Erie. However, near Waterford, New York, the boat became trapped in the Erie Canal and developed an oil leak. Unable to pay the costs of cleaning the oil spill and removing the ship, the group abandoned it and eventually dissolved.[2]

The vessel remained floating and untended in roughly the same location until March of 1996, when Claimant Emre Dluhos, a retired ship engineer, boarded it and posted notices claiming ownership. On March 26, 1996, Mr. Dluhos filed a complaint in this Court seeking title to the vessel under the law of finds. In a decision, subsequently upheld by the Second Circuit Court of Appeals, Dluhos' claim was dismissed because the Court lacked jurisdiction.

During the pendency of that action, the New York State Canal Corporation (the

---

**1.** Apparently, the *New York* is believed to be the only ship of its class still in existence. It is listed on the National Register as an historic landmark.

**2.** The federal government and New York State funded the half million dollar cost of the cleanup.

branch of the New York State Thruway Authority charged with maintaining the Erie Canal) (the "Canal Corporation"), pursuant to its powers under Canal Law § 83, seized the vessel in order to clear the canal for navigation. On April 20, 1998, the Canal Corporation contracted with Plaintiff to repair and remove the *New York* from the canal (the "Agreement").

The Agreement transferred and assigned any interest the state had in the tug to Plaintiff as partial compensation for its removal from the canal. It further stated that Plaintiff would receive $4,500 for his service and could bill an additional amount not to exceed $5,000 in order to remove the tug from the canal. Relying on these terms, Plaintiff alleges that he has spent one hundred fifty thousand dollars ($150,000) repairing the tug and removing it from the canal.

In an effort to exercise his possessory rights under the Agreement, he filed this Admiralty and Maritime action on January 14, 2000 to perfect title to the tug. On May 4, 2000, he filed a motion to establish title. In a decision dated July 10, 2000, this Court held that it did not have jurisdiction over his claim and denied the motion. He filed the present motion for reconsideration of that decision on July 27, 2000.

## II. ANALYSIS

### A. Standard for Reconsideration

■ Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The "clearly erroneous" standard of review applies to motions for reconsideration. The moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C–TC 9th Ave. Partnership,* 182 B.R. 1, 3 (N.D.N.Y.1995). Plaintiff's basis for his motion is that this Court made a clear error of law when it held that it did not have jurisdiction over his claim because he did not already hold legal title to the vessel. Although this Court enjoys broad discretion when making a determination to reconsider on this ground, *Von Ritter v. Heald,* 876 F.Supp. 18, 19 (N.D.N.Y.1995), it will not disregard the law of the prior case unless "the Court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981).

### B. Standard to Assert Jurisdiction Under Rule D

Admiralty law "provides for an *in rem* action to assert title or a possessory right to a vessel and other maritime property," which is codified by Supplementary Rule D. Thomas J. Schoenbaum, 2 Admiralty and Maritime Law § 21–4 (2d ed.1994). "Rule D can be utilized by anyone who claims a superior right to possession of a vessel or other maritime property." *Id.* "A petitory action is a suit to try title to property independent of questions concerning possession." *Id.* Rule D states, in part, that "all action . . . to try title maintainable according to the course of the admiralty practice with respect to a vessel . . . the process shall be by a warrant of arrest of the vessel." Fed.R.Civ.P. Supp. R. D.[3]

It is well established that "[a] petitory suit is utilized to *assert* legal title to a vessel, or to remove a cloud upon one's title . . . ." *Wehr v. Pheley,* No. C 99–4574,

---

**3.** There is no dispute that Plaintiff has appropriately affected arrest of the *New York.*

2000 WL 236438 at * 3 (N.D.Cal. Feb.16, 2000) (emphasis added) (citing *Kawa Leasing, Ltd. v. Yacht Sequoia,* 544 F.Supp. 1050, 1063 (D.Md.1982); *Privilege Yachting, Inc. v. Teed,* 849 F.Supp. 298, 301 (D.Del.1994)). It is also clear that, in order to bring a petitory action, Plaintiff must assert *legal* title. Assertion of a merely equitable interest is insufficient. *See* Schoenbaum, at § 21–4 (citing *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht,* 625 F.2d 44 (5th Cir.1980)); *Privilege,* 849 F.Supp. at 301; *Silver v. The Sloop Silver Cloud,* 259 F.Supp. 187, 191 (S.D.N.Y.1966).[4]

In the July 10, 2000 decision, this Court held that because Plaintiff did not already hold title to the vessel, he could not be asserting legal title to it under Rule D. As a result, this Court concluded that it lacked jurisdiction to adjudicate the merits of his claim. In doing so, the Court neglected the fact that the basis for Plaintiff's Rule D claim is the State's transfer of title of the tug to him pursuant to the Agreement.

■ The Agreement's broad language transferred and assigned "any interest" the State might have in the tug to the Plaintiff. Consequently, Plaintiff's Rule D claim is based upon legal title arguably transferred to him under the Agreement and it was clear error for this Court to conclude that it did not have jurisdiction to adjudicated the claim's merits. Because the Court has reconsidered its July 10, 2000 Order and concluded that it does have jurisdiction to adjudicate Plaintiff's claim, it must now decide whether his claim to the tug is valid.

## C. The Merits of Plaintiff's Claim

Under the Abandoned Shipwreck Act (the "ASA"):

The United States asserts title to any abandoned shipwreck that is:

(1) embedded in submerged lands of a State;

(2) embedded in coralline formations protected by a State on submerged lands of a State; or

(3) on submerged lands of a State and is included in or determined eligible for inclusion in the National Register.

43 U.S.C. § 2105(a). Title is then automatically transferred to the State in which the abandoned ship is located. *See* 43 U.S.C. § 2105(c). Therefore, a state acquires title to a shipwreck under the ASA, when the wreck is (1) abandoned and (2) falls under one of the three enumerated categories. *See Sea Hunt Inc. v. The Unidentified Shipwrecked Vessel or Vessels,* 221 F.3d 634, 640 (4th Cir.2000).

### 1. Abandonment of the *New York*

■ The Supreme Court has stated that the term "abandoned," as used in the ASA, comports with its "meaning under admiralty law." *California v. Deep Sea Research,* 523 U.S. 491, 508, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998). Traditionally, admiralty courts have recognized a presumption against finding a ship abandoned. *See Hener v. United States,* 525 F.Supp. 350, 356–357 (S.D.N.Y.1981). Because of this presumption, courts in this Circuit have long demanded a high degree of proof in order to prove that an owner has abandoned a vessel. *See, e.g., P.C. Minch,* 73 F. 859, 865 (2d Cir.1896) (stating that for a court to find abandonment of a ship in a claim for salvage, the abandonment must be "absolute, without hope or expectation of recovery"); *Bertel v. Panama Transport Co.,* 202 F.2d 247, 249 (2d Cir.1953) (rejecting application of the clearly erroneous standard to determine whether a ship is abandoned but concluding that final abandonment in a claim for salvage "had not been established by at least a preponderance of the evidence").

---

**4.** The case cited by this Court in its earlier decision, *Stathos v. The Maro,* 134 F.Supp. 330 (E.D.Va.1955), is not to the contrary. Indeed, it stands for the very same principle: that a petitory action "must be based upon a legal title and not an equitable interest therein." *Id.* at 332.

The Second Circuit has not yet had the opportunity to determine whether the "expressly abandoned" standard applies to ASA claims, as is sometimes required under the law of salvage and the law of find. *See, e.g., Dluhos v. Floating and Abandoned Vessel, known as New York,* 162 F.3d 63, 74 (2d Cir.1998) (rejecting the proposition, in a companion case to this, defendant Dluhos' claim based on the law finds, that the *New York* has been "expressly and explicitly abandoned by its owners").[5] However, the legislative findings of the ASA indicate that the term "abandoned shipwrecks" includes those "to which the owner has relinquished rights with no retention." 43 U.S.C. § 2101(b). Moreover, the policy underlying the ASA recognizes that divers, archeologists, and salvors place conflicting demands on abandoned shipwrecks that is best avoided by vesting title and management authority on such wrecks with the States. *See* H.R.Rep. No. 100–514(1) (1988), 1988 U.S.Code Cong. & Admin. News 365.

■ Accordingly, other circuits addressing whether the "express abandonment" test applies when analyzing claims under the ASA have rejected it and concluded that a shipwreck, last owned by a private party not asserting ownership, is abandoned for purposes of the ASA, when circumstantial evidence such as lapse of time, the owner's non-use, the place of the shipwreck, and the actions and conduct of the parties having ownership rights in the vessel give rise of an intent to abandon. *See Fairport International Exploration v. The Captain Lawrence,* 177 F.3d 491, 500 (6th Cir.1999). However, when a previous owner does assert ownership in a wreck, courts have held that the ASA requires the party claiming abandonment to show it by express acts. *See, Sea Hunt,* 221 F.3d at 641. Given the underlying policies of the ASA, New York's paramount interest in maintaining the navigability of its waters,

and its interest in protecting historic ships located within these waters, this Court concludes that a claimant seeking to assert a claim under the ASA against a shipwreck whose prior owners are not asserting title need not prove "express abandonment" of that wreck.

■ This decision does not resolve the difficult question of whether abandonment in these circumstances must be proven by a "preponderance of the evidence standard" or by a "clear and convincing standard." *See, e.g., Fairport,* 177 F.3d at 499 (holding that the "clear and convincing" standard applies to claims of "abandonment" under the ASA). It is clear that under either standard the circumstantial evidence presented in this case supports an implicit finding that the Association abandoned the *New York* for purposes of analyzing Plaintiff's claim under the ASA.

Most important is the fact that the Association has left the tug idle for approximately ten years. Although length of time alone does not definitively establish abandonment, *see Wilkie v. Two Hundred and Five Boxes of Sugar,* 29 F. Cas. 1247, 1247 (D.S.C.1796) (No. 17, 662), other facts support an inference that the Association abandoned the tug. For example, the Association dissolved and is no longer in existence. Additionally, no one has come forward as the purported successor to the Association in order to assert a claim to the tug even though litigation surrounding title to it has been ongoing for over four years. Moreover, the fact that the Association failed to return to the tug after it allegedly caused environmental damage and possibly exposed itself to significant liability supports an inference that it intended to abandon the tug. Finally, the Association's failure to return to the tug during the preceding decade even though it was located in an easily accessible body of water supports an inference that the Association abandoned it. Hence, this

**5.** Although this Court is aware that the Second Circuit in *Dluhos* stated that "to the extent the trial court found the New York to have been expressly abandoned, it was error," that case involved a claim based upon the law of finds and not the ASA.

Court holds that the Association abandoned the historic tug *New York* for purposes of the ASA.

### 2. ASA Categorization of the New York

The *New York* clearly falls within the third category of ships defined in the Act. It is not clear from the record whether the *New York* was on the National Register at the time of the Agreement. However, even if the ship was not on the National Register at the time of the Agreement it still falls under the third category of ships defined in the ASA.

 The requirements of the ASA are met if the ship is "determined eligible for inclusion in the National Register." 43 U.S.C. § 2105. As the ship is now included in the National Register as an historic landmark, it was clearly eligible for inclusion in the register at the time the Agreement was made. Together with the Association's abandonment of the tug, this means that New York State had legal title to the *New York* when it made the Agreement with Plaintiff. The Agreement then transferred this title to him. Consequently, this Court holds that Plaintiff has legal title to the *New York*.[6]

For these reasons, the Court grants Plaintiff's motion to establish title to the ship known as the *New York*. May she once again sail the mighty waters of this proud State in full voice, "toot toot."

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiff's motion for reconsideration is GRANTED; and it is further

ORDERED that Plaintiff's motion to establish title pursuant to Admiralty Rule D is GRANTED; and it is further

ORDERED that the *New York* be released to Plaintiff; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.

---

6. Although Richard Anderson, on behalf of The Friends of the Catwissa, submitted a letter to the Court addressing whether or not "North River Tugboat Restorations" exists, this letter did not assert a claim against the *New York*. Additionally, this Court notes that although the Second Circuit has already rejected defendant Dluhos' claim to the boat, based on the law of finds, this Court's determination that the tug falls under the provisions of the ASA provides another basis to reject his claim. The ASA states that "[t]he law of salvage and the law of finds shall not apply to abandoned shipwrecks to which section 2105 of this title applies." 43 U.S.C. § 2106(a). Consequently, any claim based on the law of finds cannot effect Plaintiff's title to the *New York*. *See, e.g. Fairport,* 177 F.3d at 498 (stating that the ASA "expressly rejects the application of the maritime laws of salvage and finds" to abandoned shipwrecks falling under its terms).