**Junior Mosie NAPIER, Appellee,**

v.

**The CHESAPEAKE AND OHIO RAILWAY COMPANY, Appellant.**

**No. 77–2196.**

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1978.

Decided Sept. 21, 1978.

Fred Adkins, Huntington, W. Va. (Sidney H. Kirstein, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., on brief), for appellant.

Raymond H. Strople, Portsmouth, Va. (Willard J. Moody, Moody, McMurran & Miller, Ltd., Portsmouth, Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and HALL, Circuit Judges.

PER CURIAM:

Junior Mosie Napier brought an action against the Chesapeake and Ohio Railway Company ("railway") under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 *et seq.,* for an arm injury he sustained while employed by the railway in 1968. His case was tried before a jury and a $10,000 verdict was awarded. The railway appeals from this judgment contending that the district court should have entered judgment on a settlement accepted by Napier's attorney prior to trial and that his evidence on the issues of negligence and damages was insufficient to sustain the jury award. We hold that the district court erred in refusing to grant the railway specific performance of the settlement agreement and, therefore, reverse for entry of judgment in the amount of $1,500 as agreed to by the railway and Napier's attorney.

The dispositive issue presented in this appeal is whether a client should be bound by a settlement agreement which is not attacked as unfair but which the client claims was unauthorized because the attorney's authority to make it was qualified by the client's erroneous belief that failure to settle immediately would foreclose any possible recovery on his claim.

Before trial the court heard testimony of Napier, his wife, his former attorney and the railway's regional claims manager on this issue. The district court found that Napier executed a contingent fee contract whereby the firm of his attorney, Donald R. Wilson, was empowered to represent him against the railway. The contract was termed a "power of attorney" and provided that the firm could not make a settlement without Napier's consent. By letter dated March 1, 1973, A. L. Williams, the railway's regional claims manager, offered to settle the case with Wilson for its "nuisance value" or the cost of trial, an amount between $1,000 or $1,500. Napier rejected this offer.

The case was called for trial on Monday, January 20, 1975. On the preceding Friday, Napier and his wife conferred with Wilson in Wilson's office for one or two hours. According to Napier and his wife, at this time they were told by Wilson that the case involved questionable liability, that if a trial became necessary Napier would have to obtain $1,400 to $1,500 in cash to pay expenses for expert witnesses and related litigation costs, and that the case could not be continued unless one of the parties was ill or for similar just cause. Because Napier believed the trial was to be held the next business day and, therefore, he would be unable to obtain cash for the costs of trial, he reluctantly concluded his conference with Wilson by saying, "I guess that if that is the best I can do, I'll have to take it."

Wilson disputed the Napiers' testimony in several respects. Wilson admitted that he told Napier a trial date could not be continued except for good cause and that he informed Napier that approximately $1,000 would be necessary to try the case. But he also testified that he believed Napier knew the case had been postponed before Napier agreed to settle, and that he thought Napier had unequivocally authorized him to settle the case for $1,500.

Soon after the Napiers left his office, Wilson telephoned Williams and agreed to settle the case for $1,500. On Monday morning, the next working day, Napier discovered that the trial had been postponed for several weeks and telephoned Wilson to inform him that he would not settle for the agreed amount which the Napiers testified was to be $2,000. Thereupon, the attorney-client relationship was terminated by mutu-

al consent and Wilson immediately telephoned Williams to inform the railway that Napier refused to settle notwithstanding their agreement on the preceding Friday.

From the foregoing facts, the court found that Wilson did not possess unqualified authority to settle Napier's case because of a mutual misunderstanding or mistake and therefore the settlement agreement entered into by Wilson and the railway was not binding upon Napier and that Napier's immediate repudiation of the settlement was effective to negate any possibility that he had ratified the unauthorized settlement agreement.

We think the district court's finding that a *mutual* misunderstanding or mistake qualified Wilson's authority to settle the case is clearly erroneous and therefore must be reversed. No mutual misunderstanding existed. The facts show that Wilson knew the case had been continued at the time of his conference with the Napiers and that he considered his authority to settle to be unqualified.

Napier testified that he granted Wilson authority to settle but did so only because of his misunderstanding that the trial was set for the next business day and could not be tried unless he immediately paid for litigation costs. He could not and thus was confronted with only one reasonable alternative which he accepted—to authorize settlement of his case. We think the dispute here is between Napier and Wilson and it provides no equitable ground for denial of specific performance of an authorized settlement agreement which has not been attacked as unfair. *See Gilbert v. United States,* 479 F.2d 1267, 1268 (2d Cir. 1973).

Therefore, we reverse the judgment in favor of plaintiff for $10,000 and remand for entry of judgment in the amount of $1,500 as agreed to in the settlement agreement.

REVERSED AND REMANDED.