Frederick L. MILLNER, Appellant,

v.

NORFOLK & WESTERN RAILWAY COMPANY, a corporation, Appellee.

No. 80–1444.

United States Court of Appeals, Fourth Circuit.

Submitted Dec. 3, 1980.

Decided March 4, 1981.

Stephen P. Meyer, Paul S. Perfater, Meyer and Perfater, Charleston, W. Va., on brief, for appellant.

Fred O. Blue, Sanders and Blue, Bluefield, W. Va., on brief, for appellee.

Before BRYAN, Senior Circuit Judge, and HALL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this FELA action by Frederick L. Millner against his employer, the Norfolk & Western Railway Co. (N&W), the N&W pleaded in bar of the action a negotiated settlement of the claim under which Millner had released the N&W from liability. Following an evidentiary hearing devoted to this issue, the district court upheld the settlement as valid and binding upon Millner and dismissed the action with prejudice. Millner appealed, challenging both the procedure by which the issue was resolved and the merits of its resolution. We hold that Millner was entitled to have the issue of settlement tried to a jury and accordingly vacate the judgment and remand to the district court for further proceedings.

I

Millner filed this action seeking damages for personal injury in March 1980. N&W responded with an answer in which it denied liability on the merits, and later filed an amended answer in which it pleaded as

an affirmative defense that Millner had entered into a binding settlement agreement. N&W then moved the district court to "enforce the settlement made and entered into between the parties hereto on or about February 29, 1980" and to "dismiss this action, with prejudice, as heretofore agreed settled." Millner made no response to this motion.

When the motion to dismiss came on for hearing before the district court, N&W presented two witnesses in support of its contention. J. Franklin Long, an attorney, testified that he had entered into a contingent fee arrangement to represent Millner in the latter's FELA action against N&W in July 1979, and that Millner had orally authorized him in advance to settle his case for $10,000. Long then testified that he began serious negotiations with Robert H. Bailey, an N&W claims agent, about the last week of February 1980. He started the negotiations with a suggested settlement of $12,000; Bailey came back with an offer of $7,500; Long reduced his request to $11,000; and Bailey went up to $9,000. They then agreed to "split the difference" and settle on $10,000. This figure was to be in addition to N&W's payment of any medical bills incurred by Millner. It was to be reduced, however, in the amount of the Railroad Retirement Board's (RRB) lien against Millner, which Bailey said the RRB had informed him amounted to $4,250. This agreement was reached late in the afternoon of February 28, 1980.

Long testified that he then called Millner to see if he would still accept a settlement of $10,000. He had approximately three phone conversations with Millner "around this time" in which they discussed the amount of the RRB lien against Millner. Millner told Long that he had only received about $700 to $1,000 in RRB checks. Long said he told Millner, however, that the RRB contended it had a lien of around $4,000 against him and that, whatever the amount of the RRB lien, that amount would be deducted from N&W's $10,000 settlement payment. He said Millner then authorized him to settle on this basis.

Long testified that following his communication of Millner's acceptance to Bailey on the morning of February 29, 1980, however, Millner changed his mind and withdrew his acceptance of the settlement offer. Millner informed Long that someone had told him that he should settle for no less than $30,000 and that, if Long could not get this amount, he would seek other counsel. Long said he then attempted to reopen the negotiations with N&W but to no avail. Millner then hired Meyer & Perfater as his counsel. Despite his earlier statement on direct examination that he had reached a settlement agreement with Bailey, Long admitted on cross-examination that he had told Meyer and Perfater at the time they were approached by Millner that no settlement agreement had been reached in Millner's case.

N&W's second witness was Robert H. Bailey, the claims agent who had negotiated with Long in Millner's case. His statement of the negotiations leading to the settlement agreement and the terms of the agreement itself was essentially the same as that of Long. He then testified that Long called him on the morning of February 29, 1980, a Friday, and told him that Millner had accepted the settlement offer. At this time they agreed to meet on the following Tuesday—March 4. In preparation for that meeting, Bailey said he drew up a release reflecting the terms of his agreement with Long.

Bailey said on the following Monday, March 3, however, he received a phone call from Long in which Long informed him that Millner had changed his mind about settling for $10,000. Millner's withdrawal was confirmed by a letter that Bailey received from Long a few days later. Bailey stated that Long asked him on March 4, 1980 if Bailey could offer a higher settlement figure, and Bailey informed Long that he had exhausted his authority. Bailey also admitted that he later received a letter from Long dated March 11, 1980 in which Long stated that it was his understanding that N&W might agree to pay an amount higher than $10,000. Bailey said he never responded to this letter.

Millner then testified in rebuttal of the testimony given by Long. He stated that he never agreed in advance to accept settlement of his claim for any amount. He also emphatically denied ever having accepted a specific offer of $10,000 by N&W, although he admitted that Long had informed him of the offer. He also admitted that he and Long had discussed the amount of the RRB lien against him but that the matter had been left with Millner to examine the record of his check stubs.

In addition to the live testimony presented at the hearing, the district court had before it several documents relevant to the case. There was a copy of the contingent fee arrangement entered into by Long and Millner on July 12, 1979, which included the statement that "[i]t is expressly understood that settlement of my/our cases will not be effected without my [Millner's] consent."

Also before the court were copies of three letters from Long to Bailey concerning Millner's case. The first letter was dated February 21, 1980 and stated that Long was interested in negotiating a settlement on behalf of Millner. The second letter, dated March 3, 1980, stated that, while Millner had orally agreed to accept a settlement of $10,000 on February 29, 1980, he had subsequently "changed his mind about settling the case for [that] amount" and now wanted $30,000. The third letter, dated March 11, 1980, stated that "[i]t is my understanding that your company may be willing to pay a higher amount if you can obtain approval from your supervisor in Roanoke."

Finally, there was a copy of the release that had been prepared by Bailey following his February 29, 1980 conversation with Long but that had never been signed by Millner. Inexplicably, this release refers not only to the May 2, 1979 injury that had been the subject of the negotiations between Bailey and Long but also to two earlier incidents involving injuries to Millner on which he might have based a claim against N&W.

At the conclusion of this evidentiary hearing, the district court immediately made its findings and rendered its decision.

The findings and decision were embodied in a written order that was subsequently prepared by N&W's counsel and signed by the court.

The district court found that the written contingent fee arrangement between Long and Millner gave Long the authority to settle the lawsuit; that this agreement was binding and subsisting until revoked by one of the parties; and that Long's authority to settle the case under that written agreement had not been terminated by Millner prior to Long's acceptance of a settlement agreement on behalf of Millner. The court then concluded that Long had, in fact, entered into a settlement agreement with Bailey on February 29, 1980. Although the district court found that Millner subsequently withdrew his acceptance of the settlement prior to the execution of a written agreement, the court concluded that the settlement agreement remained binding and enforceable.

Turning to the terms of the settlement agreement, the district court found that N&W was to pay Millner $10,000 less an RRB lien of $4,250 plus all medical expenses that Millner incurred as a result of the accident. Then, in apparent reliance on the unexecuted release prepared by Bailey, the court found that Millner had, under the agreement, released not only his claim based on the accident of May 2, 1979, but also "any claims, past, present and future, which he might have concerning personal injuries received from other accidents." Finally, the district court concluded that N&W's motion to dismiss should be converted to a motion for judgment and dismissed the action, with prejudice, "as agreed settled."

Millner appealed, based upon exceptions duly taken to the district court's findings and conclusions.

## II

The threshold question raised by this appeal is whether the settlement agreement relied on by N&W was amenable to summary enforcement by the district court. Mill-

ner contends that the May 14, 1980 hearing was, at best, a summary judgment proceeding in which summary judgment should have been denied because there was a genuine issue as to a material fact. N&W, on the other hand, contends that the May 14 hearing was in the nature of an equitable proceeding in which the court had the power summarily to enforce the settlement agreement. We agree with N&W that summary enforcement, with resultant dismissal of primary claims, may sometimes be procedurally in order, but, with Millner, that here a summary procedure would not suffice.

■■■■ A number of courts have recognized the authority of a trial court summarily to enforce a settlement agreement and to enter judgment based on that agreement without plenary hearing. *See, e. g., Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir. 1973); *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967). This authority, however, arises not under Rule 56 of the Federal Rules of Civil Procedure, but under the trial court's inherent equitable power summarily to enforce a settlement agreement when the practical effect is merely to enter a judgment by consent. *See Wood v. Virginia Hauling Co.*, 528 F.2d 423, 425 (4th Cir. 1975); *Kukla*, 483 F.2d at 621. This summary procedure has been found to be "admirably suited to situations where, for example, a binding settlement bargain is conceded as shown, and the excuse for nonperformance is comparatively unsubstantial." *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C.Cir.1969). When, however, there is a material dispute about the existence of a settlement agreement, *see, e. g., Kukla*, 483 F.2d at 621–22, or the authority of an attorney to enter a settlement agreement on behalf of his client, *see, e. g., Massachusetts Casualty Ins. Co. v. Forman*, 469 F.2d 259 (5th Cir. 1972), the trial court must, of course, conduct a plenary evidentiary hearing in order to resolve that dispute.

The decisions in this circuit are in accord with these general principles. The leading case is *Napier v. Chesapeake & Ohio R.R.*, 582 F.2d 1344 (4th Cir. 1978), which was recognized as controlling by the district court below. In *Napier* the trial court held an evidentiary hearing prior to trial on the issue of specific performance of a settlement agreement at which the plaintiff, his wife, his former attorney and the railway's regional claims manager testified. The plaintiff stated that he had accepted the settlement offer while acting under the mistaken belief that his case had not been continued and that a trial, for which he would be unable to meet the costs, was, therefore, to begin the following day. Since the plaintiff's former attorney knew the case had been continued, the trial court concluded that there was a mutual mistake of fact entitling the plaintiff to relief from the agreement. He therefore allowed the case to go to jury trial on the merits, and a substantial verdict was returned against the railroad. *Id.* at 1345–46. The railroad appealed, and we found the trial court's finding of a mutual mistake of fact to have been clearly erroneous. We therefore reversed the judgment based on the jury verdict and remanded for entry of a judgment based on the settlement agreement. *Id.* at 1346.

The summary enforcement of a settlement agreement was not at issue in *Napier*, however, because the trial court had already conducted an extensive evidentiary hearing. At the time we decided *Napier*, we had already made it clear in *Wood v. Virginia Hauling Co.*, 528 F.2d at 425, that when there is a substantial factual dispute respecting the validity of a settlement agreement, the trial court must hold an evidentiary hearing in order to resolve that dispute.

■■■ Millner argues that there were two issues of fact in dispute here. First, he contends that there was a dispute about whether there had been a meeting of the minds between Long and Bailey sufficient to find any agreement. He points to Long's admission on cross-examination that, upon questioning by Perfater and Meyer, the attorneys who replaced Long as Millner's counsel, about the status of the case, he

stated that the case had not been settled. Moreover, Millner notes that, while all the witnesses testified to negotiations covering only one accident, the release drawn up by Bailey referred to three incidents. In sharp conflict with the inferences supportable by this evidence are those that might be drawn from the mutually corroborative testimony of Long and Bailey about the agreement reached by them and by Millner's own testimony that Long did discuss the agreement with him. Whatever the relative weight that might be accorded this conflicting evidence, it reveals a sufficiently substantial dispute to preclude summary enforcement under the procedure recognized as sometimes appropriate in *Napier*.

The second factual dispute asserted by Millner—whether Millner either previously authorized or subsequently ratified any settlement negotiated by Long—is of even greater moment. On this issue the testimony of Long and that of Millner is in direct conflict, and, in seeming contradiction of the finding of the district court, the contingent fee arrangement between Long and Millner on its face only gave Long the authority to negotiate, and not to enter into, a settlement agreement. The existence of conflicting evidence on this issue made summary enforcement inappropriate in the present case.

Having concluded that an evidentiary hearing was required to resolve the factual issue of Long's authority to bind Millner to the settlement agreement, the question arises whether the issue could be considered nevertheless properly resolved by the findings of the district court based upon the evidentiary hearing held. Saving any question whether the evidentiary hearing provided would have been adequate for plenary adjudication of issues properly triable to the court, we believe that Millner was entitled here to have the issue tried to a jury.

■ Millner had made timely demand for jury trial in his complaint, making no specification of the issues to which his demand ran. Under these circumstances, he is "deemed to have demanded trial by jury for all the issues so triable," Fed.R.Civ.P. 38(c),

and this demand extends even to issues raised by the opposing party, *see* C. Wright & A. Miller, 9 *Federal Practice & Procedure* § 2318 (1976). Millner's demand must therefore be treated as running to all issues, including the issue of enforcement of the settlement agreement.

■ There remains only the question whether as to this issue Millner had a right to jury trial. On this the Supreme Court has stated that the right to jury trial is "part and parcel of the remedy afforded railroad workers under the Employers Liability Act," *Bailey v. Central Vermont Rwy.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943), and that to deprive railroad workers of the benefit of a jury trial where there is evidence to support negligence "is to take away a goodly portion of the relief which Congress has afforded them," *id.* In reliance on these fundamental principles, the Court later held that, in an FELA action, even the questions whether an employer should be estopped to plead limitations, *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), or whether an employee is entitled to rescission of a release because of fraud, *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), are triable to a jury as of right. *Accord, Cratsley v. Pittsburgh & Lake Erie R.R.*, 272 F.Supp. 330 (W.D.Pa.1967) (issue whether railroad estopped to plead limitations).

Though the undoubtedly expansive readings of jury trial right in FELA cases represented by *Glus* and *Dice* are now of some age, we know of no reason why they should not be considered to have present vitality. *See, e. g., Adkins v. Kelly's Creek R.R.*, 409 U.S. 926, 928–29, 93 S.Ct. 224, 225, 34 L.Ed.2d 184 (1972) (Douglas J., dissenting to denial of certiorari); *cf. Ott v. Midland-Ross Corporation*, 600 F.2d 24, 30 (6th Cir. 1979) (*Dice* relied on in finding jury trial right on waiver issue in ADEA case). The issue of the validity of the settlement agreement in the instant case is to us analytically indistinguishable from the issue of rescission of a release that the *Dice* Court held to be for the jury.

■ Having concluded that on the settlement issue Millner had a right to a jury trial that he properly invoked by demand, we do not believe that he then waived that right or withdrew that demand by his participation in the evidentiary hearing conducted by the district court. Rule 38(d) provides that if a proper demand for jury trial has been made, it cannot be withdrawn without the consent of all the parties, Fed. R.Civ.P. 38(d), and under Rule 39(a)(1) this consent must be given by written stipulation or "by oral stipulation made in open court and entered in the record," Fed.R.Civ.P. 39(a)(1). Read together, these rules refute any contention that Millner withdrew his demand for jury trial by failing expressly to object to the evidentiary hearing.[1]

■ For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.[2]

*VACATED AND REMANDED.*

---

1. Aside from the fact that the technical requirements of the cited rules were not met, we think waiver could not be implied on general equitable principles. The motion upon which the hearing was held was one "to dismiss." Nothing about the procedure employed was calculated to suggest to Millner that the N&W's affirmative defense to his claim was to be adjudicated by the appropriate trier of fact in a plenary evidentiary hearing. Despite the fact that live testimony was received, the hearing had all the trappings of a hearing upon summary judgment, *see* 10 Wright & Miller, *Federal Practice and Procedure: Civil* § 2723, or for "summary enforcement" under the *Napier*-approved procedure. Under the circumstances, Millner could not fairly be charged with notice that dispositive issues of fact as to which he had demanded jury trial were to be adjudicated by the court.

2. Further proceedings should be conducted on the basis that at this point the parties have

simply been shown to be at factual issue on the validity of the accord or release pleaded in avoidance of the plaintiff's claim, Fed.R.Civ.P. 8(c), in addition to any other issues raised on the pleadings. The district court hearing has served merely to reveal the existence of genuine issues of fact precluding summary disposition on the basis of that defense, whether analyzed under the requirements of Fed.R.Civ.P. 56 or those of the summary "equitable enforcement" procedure recognized in *Napier*. On this basis there has accordingly been no partial adjudication under Fed.R.Civ.P. 56(d), nor any findings of fact by the district court subject to review by this court. The defense remains for adjudication vel non, and all factual issues now shown to underlie it are triable—along with any related to the merits of the claim—to a jury, pursuant to Millner's timely demand. Whether these issues are now best tried together or separately is of course a matter for the district court's discretion.