**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COLUMBUS-AMERICA DISCOVERY
GROUP,
<u>Plaintiff-Appellant,</u>

and

TRUSTEES OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK; JACK F.
GRIMM; JOANNE LAMPE CHARLTON,
Personal Representative of the
Estate of Harry G. John,
<u>Intervenors-Plaintiffs,</u>

v.

ATLANTIC MUTUAL INSURANCE
COMPANY; COMMERCIAL UNION
ASSURANCE COMPANY, LIMITED;

ROYAL INSURANCE COMPANY,
LIMITED; SUN ALLIANCE GROUP;
GREOF AMERICA CORPORATION;
SUPERINTENDENT OF INSURANCE OF THE
STATE OF NEW YORK,
<u>Claimants-Appellees,</u>

and

THE UNIDENTIFIED WRECKED AND
ABANDONED SAILING VESSEL, its
engines, tackle, apparel,
appurtenances, cargo, etc., located
within a box defined by the
following coordinates: Northern
Boundary--31 degrees 37 minutes
North Latitude; Southern

No. 98-2120

Boundary--31 degrees 33 minutes
North Latitude; Western
Boundary--77 degrees 2 minutes
West Longitude, (believed to be the
S.S. Central America), in rem,
Defendant,

THE INSURANCE COMPANY OF NORTH
AMERICA; COMMERCIAL UNION
INSURANCE COMPANY; WILLIAM H.
MCGEE & COMPANY, INCORPORATED;
ROYAL INSURANCE; ROYAL INSURANCE
COMPANY OF AMERICA; CHUBB &
SON, INCORPORATED; SALVAGE
ASSOCIATION; UNDERWRITERS AT
LLOYD'S; LONDON ASSURANCE;
ALLIANCE ASSURANCE COMPANY,
LIMITED; GUARDIAN ROYAL
EXCHANGE; ROYAL EXCHANGE
ASSURANCE; INDEMNITY MUTUAL
MARINE ASSURANCE COMPANY;
INDEMNITY MARINE ASSURANCE
COMPANY, LIMITED; SUN INSURANCE
COMPANY OF NEW YORK; SUN
INSURANCE OFFICE, LIMITED; MARINE
INSURANCE COMPANY, LIMITED;
INDEMNITY MARINE; LONDON
ASSOCIATED CORPORATION; ROYAL
ASSOCIATED CORPORATION; ROYAL
MARINE; INDEMNITY MUTUAL; ROYAL
EXCHANGE & LONDON OFFICES;
UNION BANK OF LONDON; DENNIS
STANDEFER; THE R/V LIBERTY

2

STAR, her master, officers, crew, and all persons aboard; BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY; LAMONT-DOHERTY GEOLOGICAL INSTITUTE; S. S. GEORGE LAW PARTNERSHIP; BOSTON SALVAGE CONSULTANTS, INCORPORATED,
Claimaints.

COLUMBUS-AMERICA DISCOVERY GROUP,
Plaintiff-Appellant,

and

TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; JACK F. GRIMM; JOANNE LAMPE CHARLTON, Personal Representative of the Estate of Harry G. John,
Intervenors-Plaintiffs,

No. 98-2198

v.

ATLANTIC MUTUAL INSURANCE COMPANY; COMMERCIAL UNION ASSURANCE COMPANY, LIMITED; ROYAL INSURANCE COMPANY, LIMITED; SUN ALLIANCE GROUP; GREOF AMERICA CORPORATION; SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK,
Claimants-Appellees,

and

3

THE UNIDENTIFIED WRECKED AND ABANDONED SAILING VESSEL, its engines, tackle, apparel, appurtenances, cargo, etc., located within a box defined by the following coordinates: Northern Boundary--31 degrees 37 minutes North Latitude; Southern Boundary--31 degrees 33 minutes North Latitude; Western Boundary--77 degrees 2 minutes West Longitude, (believed to be the S.S. Central America), in rem, Defendant,

THE INSURANCE COMPANY OF NORTH AMERICA; COMMERCIAL UNION

INSURANCE COMPANY; WILLIAM H. MCGEE & COMPANY, INCORPORATED; ROYAL INSURANCE; ROYAL INSURANCE COMPANY OF AMERICA; CHUBB & SON, INCORPORATED; SALVAGE ASSOCIATION; UNDERWRITERS AT LLOYD'S; LONDON ASSURANCE; ALLIANCE ASSURANCE COMPANY, LIMITED; GUARDIAN ROYAL EXCHANGE; ROYAL EXCHANGE ASSURANCE; INDEMNITY MUTUAL MARINE ASSURANCE COMPANY; INDEMNITY MARINE ASSURANCE COMPANY, LIMITED; SUN INSURANCE COMPANY OF NEW YORK; SUN INSURANCE OFFICE, LIMITED; MARINE INSURANCE COMPANY, LIMITED;

4

INDEMNITY MARINE; LONDON
ASSOCIATED CORPORATION; ROYAL
ASSOCIATED CORPORATION; ROYAL
MARINE; INDEMNITY MUTUAL; ROYAL
EXCHANGE & LONDON OFFICES;
UNION BANK OF LONDON; DENNIS
STANDEFER; THE R/V LIBERTY STAR,
her master, officers, crew, and all
persons aboard; BOARD OF
TRUSTEES OF COLUMBIA UNIVERSITY;
LAMONT-DOHERTY GEOLOGICAL
INSTITUTE; S. S. GEORGE LAW
PARTNERSHIP; BOSTON SALVAGE
CONSULTANTS, INCORPORATED,
<u>Claimaints.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-87-363-N)

Argued: March 2, 1999

Decided: February 8, 2000

Before WIDENER, WILLIAMS, and
MICHAEL, Circuit Judges.

_____

Affirmed in part, vacated in part, reversed in part, and remanded with
instructions by published opinion. Judge Widener wrote the opinion,
in which Judge Williams and Judge Michael joined.

_____

5

**COUNSEL**

**ARGUED:** R. Hewitt Pate, HUNTON & WILLIAMS, Richmond, Virginia; Richard T. Robol, COLUMBUS-AMERICA DISCOVERY GROUP, INC., Columbus, Ohio, for Appellant. George Robert Daly, I, BIGHAM, ENGLAR, JONES & HOUSTON, New York, New York; Guilford D. Ware, CRENSHAW, WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellees. **ON BRIEF:** Sarah C. Johnson, John S. Martin, HUNTON & WILLIAMS, Richmond, Virginia; Robert W. Trafford, James D. Curphey, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellant. Joseph A. Yamali, BIGHAM, ENGLAR, JONES & HOUSTON, New York, New York; David H. Sump, CRENSHAW, WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellees.

_____

**OPINION**

WIDENER, Circuit Judge:

The appellant, Columbus-America Discovery Group, appeals three orders of the district court: an order entering a previously signed agreed order of settlement and dismissal, a sua sponte order of the district court partially vacating the previously entered agreed dismissal order, and a third order unsealing the inventory of the treasure recovered by Columbus-America from the shipwreck S.S. Central America. For the reasons that follow, we affirm in part, vacate in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

I.

In 1857, the S.S. Central America sank in the Atlantic Ocean during a powerful storm. Many lives were lost as well as substantial sums of gold belonging to passengers and a large commercial shipment of gold in route from California to New York. In 1988, after years of searching, the Columbus-America Discovery Group, a group of scientists, engineers, ocean explorers, and other experts led by scientist and ocean engineer Thomas G. Thompson, found the sunken

6

ship at the bottom of the ocean 160 miles off the South Carolina coast. (974 F.2d 455, 742 F. Supp. at 1330).

After finding the Central America, Columbus-America Discovery Group (hereinafter referred to as Columbus-America or CADG) brought an in rem proceeding in admiralty seeking to establish ownership of and the right to salvage the defendant ship and its cargo of gold and other artifacts. The district court found that Columbus-America was a first salvor under substantive admiralty law and thereby entitled to salvage the ship without interference and to the exclusion of other salvors. In its order of August 18, 1989, the district court granted Columbus-America an injunction which permanently enjoined and restrained any other persons from conducting search, survey, or other salvage operations of the site. Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, No. 87-363-N (E.D. Va. Aug. 18, 1989).

On September 29, 1989, the Underwriters and other insurers or their successors-in-interest intervened in the in rem proceeding, each claiming that it had underwritten the risk of loss and had paid claims for portions of the lost gold which all together totaled approximately $1,219,189.00. On April 3, 1990, the district court entered an order closing the action to the filing of additional claims against the defendant ship or to any items recovered therefrom whether recovered prior thereto or subsequently. Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel , No. 87-363-N (E.D. Va. April 3, 1990).

Following a trial, the district court entered its final order and opinion on August 14, 1990 holding that the Underwriters had abandoned any interest they may have had in the gold and that Columbus-America was entitled to keep everything recovered from the ship. Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, 742 F. Supp. 1327, 1348 (E.D. Va. 1990). The Underwriters appealed and a divided panel of this court held that the district court erred in applying the law of finds, rather than the law of salvage. The panel remanded the case to the district court to apply the law of salvage and for discovery and determination of the appropriate salvage award for Columbus-America. Columbus-

7

America Discovery Group v. Atlantic Mut. Ins. Co., 974 F.2d 450, 468 (4th Cir. 1992), cert. denied, 507 U.S. 1000 (1993).

Following discovery and trial on remand, the district court entered an order on November 18, 1993 finding that Columbus-America was entitled to a salvage award of 90 percent of the recovered gold allegedly insured by the Underwriters. An issue at that time, as now, was the marketing of the gold. The district court found that all parties agreed that a marketing plan was necessary. The court credited the reasoning of several marketing experts who were of opinion that the marketing plan should extend for some period of years. The court instructed the parties to agree to a central authority to conduct marketing of the gold and to present the court with a detailed plan for marketing, or if the parties could not agree, to make such recommendations to the court. Unable to agree on which party should act as the central marketing authority, the Underwriters asked the court to direct an award to the parties in kind. In an order entered January 13, 1994, the district court denied this request, finding that this approach was contrary to the Underwriters' earlier position, to the testimony of the experts, and to the greater weight of the evidence on the issue of marketing. The court then designated Columbus-America as the central marketing authority based on the work Columbus-America had already performed in consulting with numerous marketing experts, Columbus-America's collection of a great quantity of information concerning marketing, and Columbus-America's far greater interest in a successful and proper marketing because of its investment in the project and its significantly higher share of the salvage award.

The Underwriters again appealed, and Columbus-America cross-appealed on the grounds that the individual Underwriters had not established proof of what portion of the gold, if any, to which they were actually entitled. A panel of this court affirmed the district court's judgment that Columbus-America was entitled to a salvage award of 90 per cent of the treasure. We also affirmed the district court's order that the gold should be marketed as a whole with Columbus-America acting as the central marketing authority.

8

<u>Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.</u>, 56 F.3d 556 (4th Cir.), <u>cert. denied</u>, 516 U.S. 938 (1995).**1**

On remand, the district court provided certain terms and conditions under which Columbus-America was to proceed with marketing the remaining gold. See order and judgment of April 19, 1996. Following the death of the district court judge, Richard B. Kellam, the case was reassigned to Judge Clarke, and he issued a very similar marketing order on August 13, 1996.**2**

Over the following months, the relationship between the remaining Underwriters and Columbus-America became more contentious. Despite the marketing evidence relied on by the district court and the district court's statement in its order of April 19, 1996 that "the property has not yet been converted to money and will not be for some five or more years," the Underwriters pushed for immediate sale of the gold and their share of the proceeds or for division of the gold <u>in specie</u>. Columbus-America sought to keep the gold together and argued for the development of the long-range marketing approach recommended by its marketing experts, which it argued would also help protect and satisfy investors in the project. Between August 14, 1996 and May 1998, there were some 61 docket entries in the case, the majority of which involved the marketing issue. On May 14, 1998, the district court announced that it had removed Columbus-America as marketer. The court gave Columbus-America a choice -- it could (1) agree with the Underwriters to effect an <u>in specie</u> division of the treasure or (2) leave the court to appoint the Underwriters to handle marketing and sale of the treasure, but if the Underwriters declined this appointment, it would appoint a special master or hire a third party to do so. On May 19, 1998, counsel for both parties signed a settlement agreement which stated that the parties agreed to divide the treasure <u>in specie</u>. The agreement provided that the settlement was conditioned, among other things, upon the following:

_____

**1** A more detailed account of the facts can be found at 742 F. Supp. 1327 (E.D. Va. 1990) and 974 F.2d 450 (4th Cir. 1992).

**2** Judge Russell and Judge Hall from the original panel of this court have since died.

9

The parties signing a "Dismissed Agreed" order dismissing all claims of the parties with prejudice, including claims for interest, attorneys fees, costs and custodial expenses. The order will be delivered to Magistrate Judge Tommy Miller as custodian thereof on or before May 29, 1998, to be entered once the in specie division is performed . . . .

The agreement further stated that "[u]pon the failure of any of the conditions set forth in paragraph 2, the parties agree that the settlement will be null, void, and of no effect." Finally, the agreement stated that:

In the event the settlement is completed as set forth in this agreement, the endorsed "Agreed" Order as referenced in paragraph 2(c) shall be delivered to Judge J. Calvitt Clarke, Jr. for entry and upon the entry thereof, each party shall be considered released from the other from all liability of any nature whatsoever that may arise by virtue of any claim that was or may have been asserted in the action.

The Settlement Agreement was signed by both parties and filed with the court on May 21, 1998. As per the Settlement Agreement's express condition, the agreed dismissal order was consented to and signed on May 19, 1998 by counsel for both parties and given to Magistrate Judge Miller to be held in escrow until completion of the settlement. On June 17, 1998, the res was divided according to the Settlement Agreement and the Underwriters took possession of their portion.

Following the division of the res, but prior to the entry of the previously signed agreed dismissal order, Thomas G. Thompson, Columbus-America's President, informed the court by letter to Magistrate Judge Miller dated June 22, 1998 that Columbus-America wished to withdraw from the Settlement Agreement and the agreed dismissal order. Thompson stated in the letter that he regretted the agreement to divide the treasure in specie and that he believed it preferable to allow the Underwriters to market and sell the res as a whole.

A hearing was held on June 23, 1998 at which counsel for Columbus-America moved for substitution of counsel and for a delay

10

in entering the proposed agreed order or alternatively for withdrawal of Columbus-America's consent to the entry of the order. Additionally, counsel requested that if the court denied the motions, the order be changed to indicate that Columbus-America had seen, objected to, and taken exception to entry of the order rather than be entered as an agreed order as previously signed. The court denied the motions as untimely and entered the agreed dismissal order as written, without noting Columbus America's objection.**3** Subsequently, however, on July 1, 1998, the court entered a second order in which it vacated the agreed dismissal order entered on June 23, 1998"to the extent it dismisses this <u>in rem</u> action against the Defendant wreck." Finally, in a third order entered July 31, 1998, the court granted the Underwriters' motion to unseal the inventory of recovered treasure. Columbus-America now appeals these orders entered on June 23, July 1, and July 31, 1998, which we address in turn.

II.

We first address the district court's authority to enter the original "Dismissed Agreed" order that each party's counsel signed in accordance with the Settlement Agreement.

A.

A trial court has inherent equitable power to enforce summarily a settlement agreement "when the practical effect is merely to enter a judgment by consent." <u>Millner v. Norfolk & Western Ry. Co.</u>, 643

_____

**3** The court stated in its Memorandum Opinion of June 25, 1998:

> A Settlement Agreement was executed stating how the division would take place and when a pre-drafted and pre-signed agreed dismissal order would be entered. All the contingencies in the Settlement Agreement have been resolved and the agreement was fully consummated by the parties as of June 17, 1998 [the date on which the <u>res</u> was physically divided]. All that remained to be done on June 23 was for the Court to enter the agreed dismissal order, which it did. At that point, it was too late for CADG to reverse its assent to the completed <u>in specie</u> division, withdraw from the fully consummated Settlement Agreement, or recant its voluntary agreement to the dismissal order.

11

F.2d 1005, 1009 (4th Cir. 1981). However, if there is a material dispute about the existence of a settlement agreement or the authority of an attorney to enter a settlement agreement on behalf of his client, a trial court must conduct a plenary evidentiary hearing to resolve that dispute. Millner, 643 F.2d at 1009.

As a general rule, counsel of record have the apparent authority to settle litigation on behalf of their client. Moore v. Beaufort County, North Carolina, 936 F.2d 159, 163 (4th Cir. 1991). However, apparent authority can be limited by the principal, "and if the limitation is brought to the attention of the parties . . . the limitation must be respected by such parties." Pasco County Peach Ass'n v. J.F. Solley & Co., 146 F.2d 880, 883 (4th Cir. 1945); Restatement (Second) of Agency § 125 (1958) (apparent authority terminates when third person has notice of a manifestation by the principal that he no longer consents).

Prior to the entry of the agreed dismissal order, Columbus-America indicated that it wished to withdraw its consent to the Settlement Agreement, which it did by sending a letter to Magistrate Judge Miller on June 22, 1998 and then by motion at the hearing before the district court on June 23, 1998. Presumably, at least, the intent of the letter was to revoke the apparent authority of Columbus-America's attorneys, and under Millner, a separate hearing would have been required to resolve any dispute as to counsel's authority. However, without conducting a separate hearing, the district court denied these motions as untimely.

While the district court apparently erred in failing to conduct a separate hearing on Columbus-America's objection to entry of the agreed dismissal order, we are further of opinion that such error is not reversible. Columbus-America does not dispute the existence of the Settlement Agreement or that each of the conditions to entering the agreed dismissal order was satisfied. The record also indicates that each condition to the Settlement Agreement was either met or waived, leaving only the entry of the agreed dismissal order to be completed. This court has held that setting aside an otherwise valid agreement is not justified because a party has second thoughts about the results. See Young v. FDIC, 103 F.3d 1180, 1195 (4th Cir. 1997) (citing Petty v. Timken Corp., 849 F.2d 130 (4th Cir. 1988)).

12

Any argument that Columbus-America's counsel may have lacked authority to enter into the Settlement Agreement is without merit because the record clearly shows that Thompson, Columbus-America's President, authorized its attorney to execute the contract of settlement at issue here.[4] Plainly stated, a plenary hearing could only have established that Columbus-America's attorney had actual authority to execute the Settlement Agreement on May 19, 1998, which he did. This evidence would have allowed the district court to enforce summarily the Settlement Agreement by entering the agreed dismissal order. Millner, 643 F.2d at 1009. Because the district court's entry of the agreed dismissal order was correct, although for a different reason, we affirm entry of the order. See Securities and Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 88 (1943) (a lower court's decision must be affirmed if the result is correct although it may have relied upon a different reason).

B.

We next address whether the district court had jurisdiction to enforce the Settlement Agreement after entering the agreed dismissal order. Federal courts are courts of limited jurisdiction whose power is derived from the Constitution and statute, and that power cannot be expanded by judicial decree. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Generally, a district court may not enforce a Settlement Agreement unless "the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction." Fairfax Countywide Citizens Ass'n v. Fairfax County, 571 F.2d 1299, 1303 (4th Cir. 1978). However, if the Settlement Agreement is approved and incorporated into an order of the court, a breach of the agreement is a violation of the order, and the district court possesses jurisdiction

_____

[4] In an affidavit signed on July 14, 1998, Columbus-America's President, Thompson, acknowledged that the Settlement Agreement was at his instruction. Although the affidavit states that his authorization to settle was given to comply with a perceived court order to settle, Columbus-America does not in this appeal raise an issue of compulsion or duress by the district court.

13

to enforce the agreement. <u>Kokkonen</u>, 511 U.S. at 381; <u>Fairfax</u>, 571 F.2d at 1303 n.8.

The agreed dismissal order signed by the parties in this case specifically notes that "[t]he Court retains jurisdiction to enforce the settlement of the parties and the prior Orders in this case." <u>Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel</u>, No. 87-363-N (E.D. Va. June 23, 1998). Under <u>Kokkonen</u> and <u>Fairfax</u>, we hold the above quoted language is sufficient to grant the district court jurisdiction to enforce specifically the Settlement Agreement.

III.

We next address the district court's ability to partially vacate the original agreed dismissal order entered June 23, 1998 by entering a second order on July 1, 1998. Columbus-America asserts that the district court lacked authority to modify terms of the agreed dismissal order signed by the parties pursuant to the Settlement Agreement. We agree.

As discussed <u>supra</u>, a district court has inherent jurisdiction and equitable power to enforce certain agreements entered into during settlement of litigation before that court. <u>Millner</u>, 643 F.2d at 1009. Authority to enforce such an agreement, however, applies to the agreement in its entirety, not to such selected parts that the court deems appropriate. <u>Ozyagcilar v. Davis</u>, 701 F.2d 306, 308 (4th Cir. 1983). If the court determines that such a settlement agreement is only a partial settlement, then it should reject the whole. See <u>Wood v. Virginia Hauling Co.</u>, 528 F.2d 423, 426 (4th Cir. 1975) (district court may either implement a complete settlement agreed to by the parties or restore them to the status quo).

The Settlement Agreement entered into by Columbus-America and the Underwriters was expressly conditioned upon the"[p]arties signing a `Dismissed Agreed' order dismissing all claims of the parties with prejudice." The proposed agreed dismissal order stated in pertinent part:

14

On representation of the parties by their counsel that the parties have completed the division of the res as set forth in the Settlement Agreement signed on their behalf on May 19, 1998, all claims, matters, and issues raised in this case . . . have been resolved to the satisfaction of the parties and all court costs have been paid: it is ORDERED THAT:

1. This case is "DISMISSED AGREED" including all claims, matters, issues, interest, attorneys' fees, costs and custodial expenses incurred by the parties being DISMISSED WITH PREJUDICE.

Moreover, the Settlement Agreement stated that upon completion of the conditions of settlement, each party would be"considered released from the other from all liability of any nature whatsoever that may arise by virtue of any claim that was or may have been asserted in the action." Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, No. 87-363-N (E.D. Va. June 23, 1998) (Settlement Agreement).

On June 23, 1998, the district court entered the agreed dismissal order, which by its terms, dismissed agreed with prejudice all claims pursuant to a valid settlement agreement. Then, in its order of July 1, 1998, the court vacated the agreed Order "to the extent" that the Agreed Order dismissed the in rem action against the Defendant wreck, but left intact all other rights and responsibilities of the parties under the Settlement Agreement. The district court stated two reasons for its entry of the July 1, 1998 order: one, to retain in rem jurisdiction over the wreck to protect the salvor-in-possession rights of Columbus-America, and two, the court found as fact that there had not been a meeting of the minds. The court noted that the parties "disagree about whether their settlement agreement covers any future treasure salvaged from the wreck" and "a dispute will inevitably arise as to whether the Underwriters are entitled to any of it."

We first note that both Columbus-America and the Underwriters agree that the Settlement Agreement eliminates the possibility of claims between the parties over future salvage. Columbus-America states in its brief that dismissal of all claims of the parties was a "key, material term of the Agreement." [Blue brief pg 14]. The Underwrit-

15

ers also construe the Settlement Agreement as eliminating claims to future salvage. In their brief, they state that "Underwriters confirm that in accordance with the Settlement Agreement, they have no future claim. Underwriters' position that the Settlement Agreement settles all claims with prejudice, including rights to any future treasure salvaged by CADG, is consistent with the understanding of CADG." [Red brief pg 20]. Thus, contrary to the district court's assertion and construction of the Settlement Agreement, the parties had a meeting of the minds on the issue of future salvage. The Underwriters have no claim in any future treasure salvage from the wreck, and we so hold. Any contrary indication in the order of the district court of July 1, 1999 is reversed.

The settlement was conditioned upon entering an order dismissing "all claims, matters, and issues raised in this case." Columbus-America Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, No. 87-363-N (E.D. Va. June 23, 1998) (Settlement Agreement). The district court expressly reasoned that it changed the terms of the agreed dismissal order to retain in rem jurisdiction over the shipwreck and to adjudicate the Underwriters' claims to treasure recovered from the wreck in the future, claims the court found would inevitably arise. By amending the original order, which we and both parties interpret to deny all future claims of the Underwriters to future treasure salvaged from the Central America, the district court altered the Settlement Agreement by providing that future claims between the parties were in fact not settled, rather were inevitable, and the court would retain jurisdiction to adjudicate these future claims. The district court's alteration of the agreed dismissal order had the effect of re-writing the Settlement Agreement by eliminating a term to which both parties had already agreed, namely that the Underwriters had no claim to any future salvage from the Central America.

The order of the district court filed July 1, 1998 was premised in part on its opinion that the Dismissed Agreed order, filed June 23, 1998, had "dismissed the in rem action with regard to the defendant wreck." The order of July 1, 1998 then changed that part of the Dismissed Agreed order so that "the in rem action must remain open to continue the court's jurisdiction over the defendant wreck." It stated that such order "enabled the court to monitor CADG's activities as

16

salvor in possession and adjudicate any disputes with regard to treasure salvaged by CADG in the future." The district court concluded that

> [a]ccordingly, the Agreed Dismissed order is hereby vacated to the extent it dismisses this <u>in rem</u> action against the defendant wreck. This order, however, in no way relieves CADG and the Underwriters of the rights and responsibilities under the Settlement Agreement.

As we have demonstrated above, there is no dispute with regard to any claim by the Underwriters to treasure salvaged by CADG in the future. There is no such claim by the Underwriters. So this support for changing the Dismissed Agreed order filed June 23, 1998, does not exist.

We do not agree with the district court that the Dismissed Agreed order filed June 23, 1998 dismissed the <u>in rem</u> action with regard to the defendant wreck. The order is with respect to "all claims, matters and issues raised in <u>this case</u>." (italics added). "<u>This case</u>" on appeal is the quarrel between the Underwriters and Columbus-America and is not a case with respect to the jurisdiction of the district court over the defendant wreck. That case is the <u>in rem</u> action of <u>Columbus-America Discovery Group, et al., v. The Unidentified Wrecked and Abandoned Sailing Vessel, in rem, et al.</u>, District Court No. 87-363-N, which has been pending for more than twelve years, and which the Settlement Agreement and the Dismissed Agreed order leave pending except that all of the quarrel between Columbus-America and the Underwriters is here disposed of. We thus construe the Dismissed Agreed order of June 23, 1998 as not relinquishing jurisdiction of the district court over the wreck of the <u>Central America</u> and are of opinion and hold that the jurisdiction of the district court over the wreck of the <u>Central America</u> in the <u>in rem</u> action yet continues despite the Dismissed Agreed order of June 23, 1998. Since the district court's jurisdiction continues over the wreck of the <u>Central America</u> and the <u>in rem</u> action with respect to that wreck, it is able to enforce its previous orders in the case with respect to that wreck.

Our construction of the Dismissed Agreed order of June 23, 1998 is supported by the authorities and the Rules of Civil Procedure. This

is an interlocutory appeal in an admiralty case under 28 U.S.C. § 1292(a)(3). Such appeals decide only the matters which have been decided by the district court, and as with other interlocutory appeals under § 1292, the trial court has authority to pursue its own proceedings filed when a § 1292(a)(3) appeal is pending. Wright, Miller & Cooper, Federal Practice and Procedure, § 3927 (2d ed. 1996).

Although in slightly different context, the Court has spoken to the very problem before us here as to the effect of an interlocutory appeal. We think that reasoning applies in this case and follow it:

> Obviously that which is contemplated is a review of the interlocutory order, and of that only. It was not intended that the cause as a whole should be transferred to the appellate court prior to the final decree. The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered.

Ex parte Nat. Enameling & Stamping Co., 201 U.S. 156, 162 (1906).

So, we are left with the change in the Settlement Agreement the district court effected in the Dismissed Agreed order with respect to "whether Underwriters retain any rights to treasure salvaged by Columbus-America Discovery Group in the future," which was unauthorized as well as being in error. We conclude that the order of the district court filed July 1, 1998 effecting changes in the Dismissed Agreed order of June 23, 1998, must be, and it hereby is, vacated.

IV.

Having found that the initial agreed dismissal order that effectuated the parties' Settlement Agreement was properly entered by the district court, and that the district court erred in altering the parties' Settlement Agreement, we must now determine the disposition of this case.

The Underwriters argue that the district court was correct in enforcing the underlying Settlement Agreement and that the agreed order remains in full force and effect.

18

Columbus-America asserts that following the district court's order of July 1, 1998, the Settlement Agreement cannot be enforced and the parties should be returned to their pre-settlement status. Its argument that the Settlement Agreement does not bar future claims on behalf of the Underwriters is not well taken, as we have demonstrated above. It is not possible for the Underwriters and Columbus-America to have agreed that there would be no future claims by anyone else to the treasure, and the agreement could not be so construed. Any future claim made to anything salvaged from the Central America by a claimant other than the Underwriters would have to be decided at that time. In that respect, we note that Columbus-America is already protected to what would seem to be the fullest extent possible by the orders entered in this case by the court. The district court's order of August 18, 1989 is yet in effect, and it provides, among other things: that Columbus-America is the first salvor and is entitled to salvage the Central America without interference; that it has a substantive right to enjoin interference by others; that any person having notice of the order is permanently enjoined and restrained from conducting search, survey or salvage operations, etc., with respect to the Central America, and within delineated latitude and longitude boundaries in the North Atlantic.

The order of the district court filed April 3, 1990, which is yet in effect, provides that the proceeding is closed to the filing of additional claims by any person to the Central America or any items recovered therefrom, whether such items be recovered prior to the order or subsequent to it, and that all claims after April 3, 1990 are ordered foreclosed.

Those orders of the district court are enforceable by it either by order, injunction or contempt proceeding, if appropriate, and Columbus-America has received all of the protection a court could give it absent actual claims against the Central America or salvage from that ship.[5] There having been no such claims, we cannot give

_____

[5] The district court can enforce and punish willful violations of its order with its contempt powers. See Washington v. Washington State Commercial Passenger Fishing Vessel Assoc., 443 U.S. 658, 693 n.32, modified, Washington v. United States, 444 U.S. 816 (1979) ("[A] court possessed

19

any advisory opinion as to the disposition of any which might be made.

That being true, we take notice in the reply brief of Columbus-America at page 15 that it "has no desire to prolong litigation. If there is in fact a way to make <u>certain</u> no others have any claim whatsoever to future recoveries, the concepts embodied in the June 23rd order might provide an appropriate basis for resolution of the case."

We are of opinion that Columbus-America has been given all the protection it can be given consistent with due process and the previous opinion of this court in this case in 974 F.2d 450 (4th Cir. 1992).

We thus, on remand, require the district court to re-enter its Dismissed Agreed order previously entered June 23, 1998.

V.

Columbus-America also appeals the order of the district court unsealing the list of the inventory of the recovered treasure.

The evidence before the district court which supported the sealing of the inventory was that making the same public could substantially damage the ultimate value received for the antique gold. There is no evidence before us that this condition has changed. When the Settlement Agreement is made effective by virtue of this decision, a specific part of the treasure in kind will be the property of the Underwriters and the balance of the treasure in kind will be the property of Columbus-America. When our decision is final, the Underwriters may do with their share of the gold whatever they want by way of advertising, sale or otherwise, and Columbus-America may do

_____

of the res in a proceeding in rem . . . may enjoin those who would interfere with that custody."); <u>Marex International, Inc. v. Unidentified, Wrecked and Abandoned Vessel</u>, 952 F. Supp. 825, 829-30 (S.D. Ga. 1997) (granting salvor exclusive rights to salvage wreck and enjoining all third parties from interfering with those rights); <u>United States v. Crookshanks</u>, 441 F. Supp. 268, 270 (D. Or. 1977) (finding that court could hold third parties in contempt to enforce in rem injunction).

20

with the balance of the treasure as it wants by way of advertising, sale or otherwise. But the fact remains that the record in this case is that the value of the inventory may be damaged by premature release of the inventory. That being true, so much of the record in this case as reveals the items of treasure which are the property of Columbus-America will remain under seal, and the Underwriters may not disclose it. But the seal of the court is lifted as to the items of treasure in the hands of the Underwriters.

We are aware that there is a common law as well as a constitutional right to have court records made public. Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case. So we are aware that the record of the inventory will have to be made public, but not presently, over the objection of Columbus-America, it being the owner of at least 90% of the treasure involved. We are confident that future motions in that respect will receive due consideration in the district court.

VI.

Columbus-America submits that the panel majority opinion in Columbus-America Discovery Group v. Atlantic Mutual Ins. Co., 974 F.2d 450 (4th Cir. 1992), cert. denied, 507 U.S. 1000 (1993), applied a test for abandonment inconsistent with traditional maritime law. Columbus-America argues that we should adopt the dissenting opinion's abandonment test and overrule the prior panel's judgment under exceptions to the law of the case doctrine. After examination of the cases cited by Columbus-America, we agree that the majority's abandonment test was rejected by two other courts of appeal, the Ninth Circuit in Deep Sea Research, Inc. v. The Brother Jonathan, 102 F.3d 379, 387-88 (9th Cir. 1996), aff'd in part, vacated in part on other grounds, and remanded, 118 S.Ct. 1464 (1998), [6] and the Sixth Circuit

_____

[6] On remand, the Ninth Circuit vacated the judgment in its entirety except for the assumption of jurisdiction and remanded the case to the district court. Deep Sea Research, Inc. v. Brother Jonathan, 143 F.3d 1299 (9th Cir. 1998). We are not aware of any subsequent proceedings in the case.

21

in Fairport International Exploration, Inc. v. The Shipwrecked Vessel Known as the Captain Lawrence, in rem, 105 F.3d 1078 (6th Cir. 1997), vacated and remanded on other grounds, 118 S.Ct. 1558 (1998).[7] The Supreme Court, however, did not define abandonment when it reviewed Brother Jonathan. California v. Deep Sea Research, Inc., 118 S.Ct. 1464, 1473 (1998) (leaving the issue of whether the Brother Jonathan was abandoned under the Abandoned Shipwreck Act for reconsideration on remand). The Court either declined to or simply did not resolve the conflict between the Sixth, Ninth, and Fourth circuits regarding the test for abandonment and instead remanded with the clarification that the "meaning of `abandoned' under the ASA conforms with its meaning under admiralty law." California v. Deep Sea Research, Inc., 528 U.S. 491, 508 (1998).

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). Even under this instruction to adhere to earlier decisions of law in a case, the doctrine is a rule of discretion, not a jurisdictional requirement. See Smith v. Bounds , 813 F.2d 1299, 1304 (4th Cir. 1987). Under certain conditions the exceptions to the law of the case doctrine allow a panel of the court to change a prior ruling in the same case. See United States v. Aramony , 166 F.3d 655, 661 (4th Cir. 1999) ("Under law of the case doctrine . . . the decision of an appellate court establishes the law of the case[and] it must be followed in all subsequent proceedings in the same case. . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would

_____

[7] On remand, the Sixth Circuit revised its prior opinion regarding the abandonment test. Fairport International Exploration, Inc. v. The Shipwrecked Vessel, known as the Captain Lawrence, 177 F.3d 491 (6th Cir.), reh'g denied, (1999). While it held that "a State may prove by inference that a shipwreck last owned by a private party is "abandoned," Fairport, 177 F.3d at 500, it qualified that rule: "[W]e choose to view length of time as one factor among several relevant to whether a court may infer abandonment . . . [but] [w]e agree that lapse of time, alone, does not necessarily establish abandonment. . . ." Fairport, 177 F.3d at 499 (citation omitted).

22

work a manifest injustice." (internal quotations omitted) (citation omitted)); Maryland Cas. Co. v. City of South Norfolk, 54 F.2d 1032, 1039 (4th Cir. 1932) ("[W]hile we have the power on a subsequent appeal to reverse [the law of the case], we exercise [it] only in the most unusual circumstances. . . .").

A comparison of our earlier decision in this case in 974 F.2d 450 with the decision of the Supreme Court and the Ninth Circuit in The Brother Jonathan and the Sixth Circuit in Fairport indicates that the rule for finding abandonment is more stringent in this circuit than in the Sixth Circuit and may be the same as the Ninth Circuit's rule in Brother Jonathan. In any event, the rule in the three circuits is not the same and the Supreme Court has not clarified the question as the above quotation from Deep Sea Research (Brother Jonathan) indicates. Our en banc court has declined to reexamine our panel holding in 974 F.2d 450 as to the proof necessary for abandonment, although two members of the panel favored reexamination. In such event, we do not believe that the circumstances exist for a panel to change the decision of the previous panel and that that subject is better addressed by an en banc court. Cf. Oman v. Johns Mansville Corp., 764 F.2d 224, 226-27 (4th Cir. 1985).

VII.

To summarize, the order of the district court filed July 1, 1998 changing the Settlement Agreement and vacating a part of the Dismissed Agreed order filed June 23, 1998 is vacated. The Dismissed Agreed order previously filed June 23, 1998 is reinstated. The order of the district court unsealing the inventory of the treasure is affirmed so far as it concerns the treasure in the hands of the Underwriters, but is reversed so far as it concerns the inventory of the treasure in the hands of Columbus-America. The argument of Columbus-America that we adopt the dissenting opinion in this case in 974 F.2d 450 (4th Cir. 1992) is denied, that being left to an en banc court.

The parties will pay their own costs.

AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS

23